[Civ. No. 1425.  Second Appellate District.—January 9, 1914.]

## RACHEL A. McEWEN, Respondent, v. NEW YORK LIFE INSURANCE COMPANY (a Corporation), Appellant.

LIFE INSURANCE—REPRESENTATIONS IN APPLICATION—STATEMENTS AS TO PRIOR AILMENTS AND ACCIDENTS—WHETHER SUBSTANTIALLY TRUE.—Where an applicant for life insurance, in reply to the question, "What illnesses, diseases, or accidents have you had since childhood?" answers "typhoid pneumonia," whereas he was once struck by a mule as a result of which one rib was fractured, causing the spitting of purulent matter and totally disabling him for a period of nearly four months, followed by partial disability for a longer period, such answer is not "substantially true," and it was error for the court in instructing the jury on this point to use the expression "substantially true," without defining it, where it appears that the jury misunderstood the term in that they found the applicant's representation substantially true.

ID.—REPRESENTATIONS BY INSURED—"SUBSTANTIALLY TRUE"—MEANING OF WORDS.—"Substantially true" does not mean somewhat true, partially true, on the one hand; nor does it mean true in every possible and immaterial respect, on the other. It means true, without qualification, in all respects material to the risk.

ID.—SUBMITTING SPECIAL INTERROGATORIES TO JURY—FORM OF QUESTIONS.—Questions propounded to the jury as to such representations, upon which they were requested to render special verdicts, in an action on the policy, should have been whether or not the answers so given were true; or, if the term "substantially true" were

employed, the court should have instructed the jury as to the meaning of those words.

Id.—Materiality of Representations—Whether Question for Jury or for Court.—In such action it was error for the court to submit to the jury the question whether the representations so made were material, and in effect that, notwithstanding the fact that they might find the answers and representations to be untrue, they should, nevertheless, render a verdict in favor of the plaintiff, unless they found that such representations were material. Where the materiality of the representations depends upon inferences drawn from facts and circumstances proved, the question is one for a jury. A different rule, however, applies where the representations are in the form of written answers made to written questions. In such case the parties, by putting and answering the questions, have indicated that they deemed the matter to be material.

Id.—Misrepresentations by Insured—Admissibility of Evidence to Show.—Declarations made by an insured person, inconsistent with statements which he made in his application as to prior ailments and accidents, are admissible against his beneficiary in an action by the latter on the policy, where the policy expressly reserved the right in the insured to change his beneficiary.

Id.—Vested Interest of Beneficiary—When Does not Exist.—Where a policy of life insurance reserves to the insured the right to change his beneficiary, the beneficiary has no vested interest during the lifetime of the insured.

Id.—Special Findings—Inconsistency With General Verdict.—Where special findings are not only inconsistent with themselves, but irreconcilable with the general verdict, this is ground for reversal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Wm. M. Finch, Judge presiding.

The facts are stated in the opinion of the court.

Edwin A. Meserve, and Paul H. McPherrin, for Appellant.

Murphey & Poplin, for Respondent.

SHAW, J.—This action was instituted by the mother of Charles B. McEwen, deceased, to recover the amount of a policy on his life issued by defendant on July 7, 1910, upon a written application made therefor by deceased on June 29,

1910. Judgment went for plaintiff, from which, and an order denying its motion for a new trial, defendant appeals.

The insured, who was twenty-eight years of age, died on November 20, 1910. Defendant resisted payment of the policy, alleging as a ground therefor that the insured had procured the issuance of the same by means of fraud, concealment, and misrepresentations made by him in answering written questions propounded to him by defendant, and upon the faith of which the policy was issued. Some of the questions and answers were as follows:

(1) "What is your occupation? (Full details.) A. Proprietor of collecting agency.

(2) "How long have you been engaged in your present occupation? A. Ten years.

(3) "What was your previous occupation? A. Cattle business.

(4) "What is your daily consumption of wine, spirits or malt liquors? A. No daily habit—occasional beer.

(5) "Have you at any time used any of them to excess? A. No.

(6) "Have you ever raised or spat blood? A. No.

(7) "What illnesses, diseases, or accidents have you had since childhood? (The examiner should satisfy himself that the applicant gives full and careful answers to this question.) A. Typhoid pneumonia. One attack in 1891; duration two months; severe; complete recovery.

(8) "How long since you consulted or have had the care of a physician? A. 1891; Dr. Thomas, Bucyrus, Ohio.

(9) "If so, for what ailment; name and address of physician? A. Typhoid pneumonia."

At the close of the questions, McEwen stated in writing that "I declare, on behalf of myself and of any person who shall have or claim any interest in any insurance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete and true."

In addition to a general verdict, the jury were instructed to render special verdicts upon the answers given to the foregoing questions, and in submitting the same to the jury in each case was called upon to state whether or not the answers so given by McEwen in response to the questions were "sub-

stantially true.''   The use of the term, ''substantially true,''
without instructions restricting or explaining the same, gave
to the jury in their consideration of the answers a wide lati-
tude, and it is apparent from some of the answers given that
they did not understand the meaning of the term.   As illus-
trating such fact, the jury found that, in response to the
question, ''What illnesses, diseases, or accidents have you had
since childhood; name of disease, number of attacks, date,
duration, severity, results?''   McEwen's answer thereto,
''Typhoid pneumonia, one, 1891, 2 months, severe, complete
recovery,'' was substantially true, and at the same time, by
its special verdict, found that in the month of July, 1909, he
was struck by a mule, as a result of which one rib was
fractured, causing the spitting of purulent matter and totally
disabling him for a period of nearly four months, followed
by partial disability for a longer period.   '' 'Substantially
true' does not mean somewhat true, partially true, on the
one hand; nor does it mean true in every possible and imma-
terial respect, on the other.   It means true, without qualifica-
tion, in all respects material to the risk.''   (*France* v. *Aetna
Life Ins. Co.,* 9 Fed. Cas. 657 (No. 5027); *Campbell* v. *New
England Mutual Life Ins. Co.,* 98 Mass. 381; *Jeffrey* v. *United
Order of Golden Cross,* 97 Me. 176, [53 Atl. 1102].)   The
questions propounded to the jury and upon which they were
requested to render special verdicts, should have been whether
or not the answers so given were true; or, in using the term
''substantially true,'' the court should have instructed it as
to the meaning of the term.

Not only did the court err as above stated, but likewise
erred in submitting to the jury throughout its instructions
the question as to whether or not the representations so made
were material, and it was in effect told that, notwithstanding
the fact that it might find the answers and representations
so made by McEwen to be untrue, it should, nevertheless,
render a verdict in favor of plaintiff, unless it found that
such representations *were material.*   Where the materiality
of the representations depends upon inferences drawn from
facts and circumstances proved, the question is one for a jury.
A different rule, however, applies where the representations
are in the form of written answers made to written questions.
In such case the parties, by putting and answering the ques-

tions, have indicated that they deemed the matter to be material. Says May on Insurance, section 185: "The inquiry shows that the insurer considers the fact material, and an answer by the insured affords a just inference that he assents to the insurer's view. The inquiry and answer are tantamount to an agreement that the matter inquired about is material, and its materiality is not therefore open to be tried by the jury," in support of which text the author cites a number of cases. This rule has been modified by our statute, which provides that "the materiality of a representation" (Civ. Code, sec. 2581) "is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of proposed contract, or in making his inquiries." (Civ. Code, sec. 2565.) "The language of a representation is to be interpreted by the same rules as the language of contracts in general." (Civ. Code, sec. 2573.) The representations were in writing, and where a contract is in writing its meaning is not for the jury to determine, but its interpretation is a question of law for the determination of the court; hence, since the court must interpret the language in which the representation is made, the court must likewise determine whether, so interpreted, it is material in that the insurance company was by reason thereof influenced in "forming its estimate of the disadvantages of the proposed contract, or in making its inquiries." Conceding that by reason of this statute the rule laid down in May on Insurance, section 185, and followed by the courts of many states, is inapplicable, we are, nevertheless, of the opinion that under the statute the materiality of the representations was a question of law for determination of the court and not the jury.

For the purpose of showing that the representations so made by McEwen were false, defendant offered evidence which tended to prove that on September 27, 1909, he had stated to a physician that he spat blood and had hemorrhages in the night and morning after coughing; and also that on October 22, 1910, in the trial of a case where he was charged with the commisison of a public offense on July 26, 1910, he testified in extenuation of the alleged offense that he was intoxicated; that up to about ten days before October 22, 1910,

he was a heavy drinker and drank liquor to excess, resulting
at times in a condition of prolonged intoxication. The court
sustained plaintiff's objection to this evidence, holding that
such declarations, though inconsistent with McEwen's repre-
sentations made to defendant when applying for the policy,
were, nevertheless, inadmissible against the beneficiary therein.
This ruling is assigned as error. As we understand from the
presentation of the case by counsel for both parties, this rul-
ing was based solely upon the theory that plaintiff, named
as beneficiary in the policy, had a vested interest therein,
and hence her rights could not be affected by declarations
made by the insured, unless they were part of the *res gestae.*
This principle is fully supported by the case of *Yore* v.
*Booth,* 110 Cal. 238, [52 Am. St. Rep. 81, 42 Pac. 808], as
well as numerous cases in other jurisdictions. This case,
however, cannot be deemed authority in support of respond-
ent's contention, for the reason that by the express terms of
the contract the insured reserved to himself the right of
revocation as to the beneficiary. By the terms of the policy
the company agreed to pay, upon proof of the death of
Charles B. McEwen, the sum of fifteen thousand dollars "to
Rachel A. McEwen, mother of the insured, beneficiary, with
right of revocation"; and immediately following, under the
head of "Change of Beneficiary," the policy provides that
"when the right of revocation has been reserved . . . the
insured . . . may . . . designate a new beneficiary." In the
case of *Waring* v. *Wilcox,* 8 Cal. App. 317, [96 Pac 910],
this court held, reading from the syllabus: "Where a policy
of life insurance reserves to the insured the right to change
the beneficiary, upon written request therefor, the interest
of a designated beneficiary prior to the death of the insured
is that of a mere expectancy of an incompleted gift, subject
to revocation at the will of the insured." To the same effect
are the cases of *Hopkins* v. *Northwestern Life Assur. Co.,*
99 Fed. 199, [40 C. C. A. 1]; *Thomas* v. *Grand Lodge,* 12 Wash.
500, [41 Pac. 882]; and *Union Mutual Assoc.* v. *Montgomery,*
70 Mich. 587, [14 Am. St. Rep. 519, 38 N. W. 588]. Since
the insured had the right to change the beneficiary named in
the policy, it must follow that plaintiff had no vested interest
therein. Until McEwen's death, he might have named any
one, including his estate, as beneficiary in the policy, and this

being true, the ownership of the policy must be deemed to have been vested in him. (*Smith* v. *National Benefit Soc.*, 51 Hun, 575, [4 N. Y. Supp. 521].) The right of plaintiff was that of a successor in interest to deceased, and hence, under the provisions of section 1853 of the Code of Civil Procedure, proof of the declaration, if it tended to prove the falsity of the representations made by McEwen, should have been admitted. (*Steinhausen* v. *Preferred Mut. etc. Assoc.*, 59 Hun, 336, [13 N. Y. Supp. 36]; *Thomas* v. *Grand Lodge*, 12 Wash. 500, [41 Pac. 882].)

Having reached the conclusion that the case was, for the reasons given, tried upon an erroneous theory, as to which, however, we must concede the authorities are by no means harmonious, we deem it unnecessary to discuss numerous other errors assigned by appellant. Suffice it to say, the special findings of the jury, some of which are not justified by the evidence, are not only inconsistent with themselves, but irreconcilable with the general verdict, which fact alone would warrant a reversal. (*Di Vecchio* v. *Luchsinger*, 12 Cal. App. 222, [107 Pac. 315]; *Cox* v. *Delmas*, 99 Cal. 124, [33 Pac. 836]; *McAulay* v. *Moody*, 128 Cal. 208, [60 Pac. 778].) The trial court should have granted defendant's motion for a new trial.

The judgment and order are, therefore, reversed.

Conrey, P. J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 6, 1914, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 10, 1914.