[Civ. No. 1632.   Second Appellate District.—June 23, 1915.]

ELLA R. WESTPHALL et al., Appellants, v. METRO-
POLITAN LIFE INSURANCE COMPANY (a Corpo-
ration), Respondent.

LIFE INSURANCE — APPLICATION — PRINTED AFFIRMATIVE STATEMENTS—
SIGNING WITHOUT QUALIFICATION — REPRESENTATIONS OF MATERIAL
FACTS.—Where an application for a policy of life insurance con-
tains printed statements affirmatively reciting that the signer of the
application had never had any of a specified number of well-recog-
nized diseases, and that he was in sound health and had no physical
or mental defect or infirmity of any kind, and such statements end
with the word "except" followed by a blank space wherein the ap-
plicant might insert such explanation, limitation, or qualification
of the printed statements as might accord with the true facts, and
no insertion is made therein, such statements upon the signing of the
application, become representations of material facts, and where it
is shown, in an action to recover upon a policy issued upon such an
application, that the insured was at the time of the application and
for a long time prior thereto subject to recurring fits of epilepsy
and in ill-health, the omission to write in such exception in the appli-
cation may be set up as a defense to the action as being the fraudu-
lent concealment of a material fact.

ID.—KNOWLEDGE OF MEDICAL EXAMINER CONTRARY TO STATEMENTS IN
APPLICATION—EFFECT UPON COMPANY.—Where such an application
also provides that "no statements, promises or information made or
given by or to the person soliciting or taking the application for the
policy or by or to any other person, shall be binding on the com-
pany, or in any manner affect its rights, unless such statements,
promises, or information be reduced to writing and presented to the
officers of the company at the Home Office," who alone, it was agreed,
had the authority to determine whether or not a policy should issue
upon the application, the company is not bound by any knowledge
or information obtained by the medical examiner or solicitor con-
trary to the written statements contained in the application made
by the applicant, unless imparted to the home officers of the company
in writing, nor does such knowledge or information constitute a
waiver as to false statements voluntarily made in the application.

APPEAL from a judgment of the Superior Court of the
County of Los Angeles and from an order denying a new
trial.   Stanley A. Smith, Judge presiding.

The facts are stated in the opinion of the court.

Valentine & Newby, for Appellants.

A. S. Halsted, and Wilfred M. Peck, for Respondent.

SHAW, J.—Plaintiffs appeal from a judgment entered against them upon a verdict rendered as directed by the court in favor of the defendant, and from an order of court denying their motion for a new trial.

The action was instituted upon a policy of life insurance wherein plaintiff Ella R. Westphall was named as beneficiary. The policy, dated April 22, 1913, was issued by defendant to Ira E. Westphall, who died on August 4, 1913. The written application by him made therefor is dated April 15, 1913.

A copy of the policy and application therefor was attached to and made a part of the complaint. The policy recites that it is issued ''in consideration of the application for this policy, copy of which application is attached hereto and made a part hereof,'' and the payment of the stipulated premiums. The application is divided into parts, designated part A and part B. Part A, as stated therein, was ''to be signed by the applicant for insurance and proposed beneficiary.'' This contained printed questions, the answers to which, if true as made in writing by the applicant, conveyed to the company information sought by such interrogatories. It also contained a provision as follows: ''It is agreed that inasmuch as only the officers at the Home Office of the company in the city of New York have authority to determine whether or not a policy shall issue upon this application, and as they act on the written statements, answers, and agreements herein made, no statements, promises, or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, promises, or information be reduced to writing and presented to the officers of the company at the Home Office.''

''And it is further declared and agreed that the foregoing statements and answers, and also the statements and answers on the next page hereof in answer to the medical examiner, are correct, and wholly true, and that they shall form the basis of the contract of insurance if one be issued''; attached to which was the signature of Ira E. Westphall, the applicant.

"The statements and answers on the next page," mentioned in the last paragraph quoted, refer to those contained in part B of the application. This, as appears therefrom, was addressed to "The Metropolitan Life Insurance Company," and contained the following: "To induce the Metropolitan Life Insurance Company to issue policy, and as consideration therefor, I agree, on behalf of myself and of any other person who shall have or claim interest in any policy issued under this application, as follows: Wherever nothing is written in the following paragraphs it is agreed that the declaration is true without exception." This part of the application was in the form of statements made by the applicant and divided into numbered paragraphs and each paragraph ending with the word "except," in the blank space following which, as indicated, it was intended that the applicant, by writing, should insert such explanation, limitation, or qualification of the printed statement as might accord with the true facts. Statement No. 2, so contained in part B, was as follows: "I have never had any of the following complaints or diseases: Apoplexy . . . fits or convulsions . . . (naming a number of well-recognized diseases) varicose veins, except." No explanation, qualification, or other statement was inserted in the blank space following the word "except"; so that it appeared therefrom that said statement constituted a positive representation that the applicant had never had or suffered from any of the complaints or diseases designated in said paragraph. Paragraph 3 of said statement was as follows: "I am now in sound health. . . . nor have I any physical or mental defect or infirmity of any kind, except." Here again, by reason of no qualification of the statement being inserted, it constitutes a positive assertion as to a fact. At the end of part B, and just before the signature of the applicant attached thereto, is the following: "I hereby declare that the application to the Metropolitan Life Insurance Company for an insurance on my life was signed by me, and that I renew and confirm my agreements therein as to the answers given to the medical examiner, and I hereby declare that said answers are correctly recorded hereon." It thus appears that, while part A contained questions to be answered by the applicant, part B was a statement and representation with reference to what the company regarded as material facts which, as well as upon the answers given, formed the basis of the proposed contract, and in reliance upon the in-

formation thus obtained it was enabled to determine whether or not the risk was such as it desired to assume.

The answer admitted the issuance of the policy, but as a defense to the cause of action based thereon alleged that it was induced to issue the same in reliance upon the statements and representations contained in the written application made therefor by Ira E. Westphall wherein, among other things, he represented to defendant that he was at the time of making the application in sound health and had no physical or mental defect or infirmity of any kind, and that he had never had "fits or convulsions"; which answer further alleged that said statements so made by said applicant were false and at the time when made known to said applicant to be false; that in truth and in fact, as said applicant well knew, he was at the time, and for a long time theretofore had been, in ill health and subject to recurring fits of epilepsy and was not, as stated, in sound health. That said applicant for the purpose of inducing defendant to issue to him said policy of insurance, fraudulently concealed from it the fact that he was subject to said fits of epilepsy and was not in sound health, which fact was well known to him.

The evidence conclusively and without contradiction showed that at the time when deceased made the application, and for a long time prior thereto, he was subject to recurring fits or attacks of epilepsy, which for the time rendered him unconscious and helpless, and that such condition of health was well known to him, members of his family, and acquaintances among whom were public officers who, when he was suffering from such attacks, had assumed care and custody of him. This uncontradicted evidence is of a character that renders it unnecessary to refer to it at length.

Actual fraud is defined as "the suppression of that which is true by one having knowledge or belief of the fact." (Civ. Code, sec. 1572, subd. 3.) That the statement was material follows from the fact that the insurer exacted a statement not only as to whether applicant was subject to fits of epilepsy, but as to whether he was in sound health or suffering from any physical or mental infirmity of any kind. Says May on Insurance (sec. 185): "The inquiry shows that the insurer considers the fact material, and an answer by the insured affords a just inference that he assents to the insurer's view. . . . Nothing, therefore, can be more reasonable

than that parties entering into a contract of insurance shall determine for themselves what they think to be material.'' (*McEwen* v. *New York Life Ins. Co.*, 23 Cal. App. 694, [139 Pac. 242].)    That the statement was material admits of no doubt.

Appellant insists that, since the statements contained in part B do not call for answers, they were mere assertions of fact made by the company, and hence they could not be construed as representations made by the applicant.    There is no merit in this contention.    Until signed they were not statements of any person, being in the nature of a mere blank sheet of paper.    When the applicant signed part B, certifying, as shown, in the strongest terms to the truth of the statements therein contained, and delivered it to defendant, they became his solemn representations and of the same binding force upon him as though he had himself written them out in longhand and signed them.

It is also insisted that the statements were not read to the applicant and that he did not read them himself, but attached his signature thereto at the suggestion of the medical examiner; hence the company is estopped from invoking the alleged fraud as a defense.    It is not alleged or shown that the applicant's signature was procured by fraud; neither is there any evidence that part B was signed at the suggestion of the medical examiner, or that the applicant acted otherwise than of his own motion in attaching his signature thereto.    Nor is there any evidence that the applicant did not read the statements and did not know the contents of part B when he signed the same. '

The covenants contained in a contract of insurance like those contained in any other contract must, in the absence of fraud, be deemed binding upon the parties to it; and since it was agreed by the parties to the contract under consideration that ''no statements, promises, or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, promises, or information be reduced to writing and presented to the officers of the company at the Home Office,'' *who, alone, it was agreed,* had the *authority to determine* whether or not a policy should issue upon the application, any knowledge or information obtained by the medical examiner

or solicitor contrary to the written statements contained in the application made by the applicant, copy of which was made part of and delivered with the policy could not, unless in writing imparted to the home offices of the company, bind the defendant, or constitute a waiver as to false statements voluntarily made in the application. (*Ætna Life Ins. Co.* v. *Moore*, 231 U. S. 543, [58 L. Ed. 356, 34 Sup. Ct. Rep. 186], and cases there cited; *Iverson* v. *Metropolitan Life Ins. Co.*, 151 Cal. 746, [13 L. R. A. (N. S.) 866, 91 Pac. 609]; *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204, [142 Pac. 51].)

There might be circumstances partaking of fraud in procuring an applicant's signature which, upon being shown, would estop the company from pleading the false statement as a defense to an action to recover upon the contract. Thus, it has been held that where the applicant, in response to questions asked by the agent, gave a true account of attacks of disease or subject of inquiry and the agent, deeming it unimportant, failed to insert the full statement or inserted an answer contrary to that made, and induced the applicant to attach his signature thereto without reading it, the company, notwithstanding the false answer so inserted, is nevertheless bound. Such appears to be the holding in *Lyon* v. *United Moderns*, 148 Cal. 470, [113 Am. St. Rep. 291, 7 Ann. Cas. 672, 4 L. R. A. (N. S.) 247, 83 Pac. 804], the record in which discloses no such limitations as here upon uncommunicated knowledge acquired by a medical examiner. The question there involved the medical report as written and the applicant's answers inserted therein by the medical examiner, and it was held that the applicant was not responsible for the neglect or omission of the medical examiner to insert the answers given where there was no pretense that he had actual knowledge of the contents of the report, although he had signed a statement at the end thereof. In Cooley's Briefs on the Law of Insurance (vol. 3, p. 2594), it is said: "From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy." And in *Menk* v. *Home Insurance Co.*, 76 Cal. 50, [9 Am. St. Rep. 158, 14 Pac.

837, 18 Pac. 117], it is said: "Nor would misstatements be fatal to the claim of plaintiff which the agent well knew to be false when he made out the application, received the money of the applicant, and issued the policy." The points involved in these cases, in our opinion, are not analogous to the question here presented. In the Menk case it appears that the agent, having knowledge that misstatements were made in the application and knowing the true facts, nevertheless *issued* the policy. The defense here presented is not that false answers were given to the medical examiner, nor any omission on the part of the medical examiner to insert the answers so given in response to his questions, indeed it is conceded that such answers were not only given correctly, but correctly inserted in the report. The vice alleged is that the applicant in applying for the policy of insurance made certain representations in writing to the company, *not in response to questions,* to the effect that he was in sound health and not suffering from any physical or mental infirmity, and had never had "fits or convulsions," which statements were clearly known by him to be false. The affirmative form of the application and statements therein were not such as to require any questions on the part of the medical examiner; hence the court did not err in refusing to permit plaintiffs to ask their witness whether or not such examiner had questioned the applicant upon such subject.

There was no error in permitting the physicians called as experts to testify in answer to the hypothetical question put to them that the applicant was suffering from what medical men termed "epilepsy," which was synonymous with the term "fits" as used by laymen. Neither is there any merit in the contention that the first premium paid by Westphall was tendered to the beneficiary, plaintiff herein, instead of the personal representatives of deceased. He was a single man, and presumably any property to which he was entitled would go to the mother and father.

Appellants complain because of the refusal of the court to give a number of instructions requested at the close of the trial, and devote much of their brief to an argument as to the correctness of these instructions. Having reached the conclusion that the court did not err in directing a verdict for defendant, no purpose could be subserved in discussing the abstract question as to whether or not these instructions em-

bodied correct principles of law. As said in *O'Connor* v. *Witherby*, 111 Cal. 528, [44 Pac. 227], the giving of such an instruction is "hazardous and can be sanctioned only in the clearest cases," among which is the case presented by this record.

The judgment and order appealed from are affirmed.

Conrey, P. J., and James J., concurred.