[Civ. No. 1692.   Second Appellate District.—March 24, 1916.]

## R. C. PORTER, Respondent, v. GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, LIMITED (a Corporation), Appellant.

INSURANCE LAW—APPLICATION FOR ACCIDENT POLICY—FAILURE TO DISCLOSE EYE AFFLICTION—KNOWLEDGE OF AGENT—LIABILITY OF COMPANY.—An insurance company is not liable upon a policy of accident insurance for an illness of the insured consisting principally of an infection of the eye described as purulent conjunctivitis, where he, in his written application for the policy, stated that he had never suffered any injury to the sight of either eye, and that he had not been disabled by accident or illness during the five years preceding the time of making the application, whereas he had in fact suffered an illness of such character and of such seriousness that required the services of a specialist within the five-year period, notwithstanding that the agent of the company, who had only authority to receive and forward the application, countersign and deliver a policy, collect the premium and receive and forward the proofs of claim, was informed of such illness at the time of the signing of the application by the insured.

ID.—AUTHORITY OF INSURANCE AGENTS.—One who has authority to take applications, receive and receipt for premiums, forward them, receive policies from the company, and deliver them after countersigning them, has no power to bind the company by a contract of insurance in any other way than by delivery of a policy issued by the company.

ID.—POWERS OF GENERAL AGENT.— A general agent, in a strict legal sense, is one who has all the powers of his principal, as to the business in which he is engaged—an extent of authority which is not often conferred in insurance; in that business an agent is termed a general agent rather with reference to geographical extent of his authority, in contradistinction to a local agent, who may have original powers, though exercising them within more restricted limits; and the general agent may appoint local and subagents which a local agent cannot.

ID.—LIMITATION OF POWERS OF AGENT.—An insurance company, like any other principal, has authority to limit powers of its agent, and where this is done by clear and plain terms in the policy and the applicant accepts the policy, it becomes a contract between him and the company and he is charged with knowledge of its terms; among others, the limitations upon the power of the agent of the company.

ID.—WAIVER OF CONDITIONS AND FORFEITURES—AUTHORITY OF AGENT.— The authority of an agent to effect a waiver in the face of a limita-

tion denying his power to waive warranties or conditions is not vested in every agent; unless such authority be given to some particular agent to do so, as a general rule, it is only agents of the company who are empowered to issue and deliver policies who may be regarded as having the power to waive conditions and forfeitures.

Id.—Application for Policy—Statements of Applicant.—Where the applicant for an insurance policy signs an application certifying to the truth of the statements therein contained material to the risk and delivers it to the company, those statements become his solemn representations; and even though filled out by an agent upon a form furnished by the company, they are (in the absence of fraud) of the same binding force upon the applicant as though he had himself written them out in longhand and signed them.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge.

The facts are stated in the opinion of the court.

Herbert W. Kidd, and Perry F. Backus, for Appellant.

T. A. Williams, for Respondent.

CONREY, P. J.—The defendant appeals from a judgment which awarded to plaintiff the sum of $560 allowed as compensation for a four-months' period of disability of the plaintiff, found to have resulted from an accident covered by the terms of an insurance policy issued by the defendant to the plaintiff.

At a time prior to the issuance of the policy, plaintiff signed an application to the defendant for a policy of insurance and delivered it at Dallas, Texas, to J. H. Wilson, an agent of the defendant. The application was upon a form the blanks in which were filled in writing by the agent, the information being furnished by the plaintiff. A portion of the application reads as follows:

"(C) *I have never been* ruptured *or otherwise injured* or suffered the loss of a limb or *the sight of either eye.* (D) *My* hearing or *vision is not impaired.* (E) I have not had any medical or surgical treatment during the past five years, except as here stated. No exceptions.

"I am not subject to, do not now have, nor have I ever had fits of any kind, vertigo, hernia, paralysis, rheumatism, sciatica, lumbago, nor any disease or infirmity, mental, physi-

cal, nervous, venereal, chronic or inherited, except as here stated. No exceptions.

"*I understand and agree that* the insurance is not effective until the policy has actually been issued by the company and the premium paid, that *the company is not bound by any knowledge of or statements made by or to any agent unless written hereon. I further agree to accept the policy subject to all its conditions* and pay the monthly premium of two dollars in advance without notice."

A policy bearing date September 4, 1908, was thereafter issued pursuant to this application. It contains, among other things, the following terms: " . . . General Accident, Fire & Life Assurance Corp., Ltd., of Perth, Scotland. Kelly & Norie-Miller, United States managers. United States offices, 55 John street, New York. (Hereinafter called the company.)

"In consideration of the premium, and the statements in the application for this policy, a copy of which is attached hereto and made a part hereof, which statements the assured, on the acceptance of this policy, warrants to be true, does hereby insure R. C. Porter . . . subject to all conditions and limitations hereinafter contained, . . . against accidental death and dismemberment . . . and disability due to either accident or illness, as hereinafter respectively defined, limited and specified.

" (R) This policy, with a copy of the application therefor signed by the assured, and any riders or indorsements signed by or on behalf of the United States managers and indorsed hereon or attached hereto shall constitute the entire contract of insurance except only as the same may be affected by any table of rates and classification of risks filed prior to the issuance of this policy with the insurance department of the state in which it is issued or delivered, and no statement made by the assured not incorporated in or indorsed on this policy shall avoid it or be used in evidence, and no provision of the charter, constitution or by-laws of the company shall be used in defense of any claim arising under this policy. *No agent has authority* to change this policy or *waive any of its provisions, and no* assignment, change or *waiver hereof shall be valid unless agreed to in writing by or on behalf of the United States managers of the company and indorsed hereon.*

"In witness whereof, the General Accident, Fire and Life Assurance Corporation, Limited, by its United States man-

agers, has executed and attested these presents, but this policy shall not be valid unless countersigned by the duly authorized representatives of the company.

"The premium on this policy is two dollars per month. This policy is dated the 4th day of September, 1908. Countersigned at Dallas, Texas, this 4th day of September, 1908. J. H. Wilson, Authorized and Commissioned Representative. Kelly & Norie-Miller, United States Managers."

It is undisputed that the foregoing policy was in force during the period of time for which compensation has been awarded by the judgment herein; unless it be held that the validity of the policy was affected by an alleged breach of warranty on the part of plaintiff in that his application for the policy contained certain misrepresentations of fact. The defendant by its answer alleged that the statements contained in the application were false in certain particulars and by the plaintiff were known to be false; and especially that prior to the making of said application for insurance, plaintiff had suffered for many years with eye trouble, and that prior to the execution by plaintiff of said application, and the issuance of said policy of insurance, plaintiff had suffered for many years from defective vision. Defendant further alleged that each of the representations so made was relied upon, and the policy issued by the defendant by reason of said statements contained in the application and in full reliance thereon and not otherwise.

The disability for which plaintiff claims compensation began on or about the fourteenth day of July, 1912. In presenting to defendant his proofs of claim, and in his complaint in this action until it was amended at the close of the trial, the claim was based upon alleged illness and not upon the occurrence of any accident. This illness consisted principally in an infection of the left eye, and was described as purulent conjunctivitis. Notwithstanding the representation in the application for insurance that the applicant had never suffered any injury to the sight of either eye, and that he had not been disabled by accident or illness during the five years preceding the time of making the application, it is admitted by the plaintiff in his testimony, and in the proofs of claim submitted by him, that these representations were not true. In a letter written by plaintiff to the defendant, under date of November 11, 1912, he stated that, about fifteen years before that date, a

broken part of a dental instrument had been left in one of his eye teeth, which affected the nerve of the tooth extending up to the eye, and he had not discovered the presence of the piece of metal in this tooth until January or February, 1912, when the tooth was extracted. He said: "This had affected the nerve of my tooth extending up to the eye, and the dentist and the specialist then declared to me that the trouble which I suffered with about eight years ago was caused by this broken instrument in my tooth." In an earlier part of the letter, he referred to the former trouble with his eye as follows: "I had a former attack of my eye about seven or eight years ago, and the trouble I had then was of an entirely different nature from the attack which I have recently suffered with. The specialist at that time could give no reason for the trouble which I was suffering with." Thus it is definitely admitted that less than five years before applying for this policy the plaintiff had suffered an illness pertaining to the left eye, and of such seriousness that for that trouble he consulted or was treated by a specialist. With this same letter the plaintiff forwarded to the defendant two certificates of physicians, in one of which it was stated that the claimant "had similar attacks several years ago"; and the other referred to a similar disability as occurring about "seven years ago." The plaintiff further admitted that at that time his eye was treated daily for several weeks, by a physician.

On behalf of respondent it is contended that, while the application was being prepared, he stated to the agent Wilson the facts concerning his former trouble with his left eye; that the agent omitted to include those facts while filling out the application; and that the relation of Wilson to the company was that of a general agent whose knowledge of the facts was binding upon the company, notwithstanding the defect in the written application.

In its findings the court below stated the facts in accordance with this contention, by finding: "That the defendant delivered said policy and accepted the premiums from the plaintiff with full knowledge of all medical or surgical treatment received by the plaintiff for more than five years prior to the issuance and delivery of said contract or policy; that the defendant likewise at said time had full knowledge of any real or pretended impairment of the plaintiff's vision, and being fully advised, itself filled out the application for the

said contract or policy and delivered the same and accepted the premiums from the plaintiff thereon.''

The evidence is sufficient to show that the actual facts concerning plaintiff's former illnesses and eye trouble were stated by the plaintiff to Wilson at the time of making the application. The sufficiency of the evidence to support the finding, quoted above, therefore turns upon the nature and extent of Wilson's agency and the limitations upon his authority to waive the statement in writing by the plaintiff of facts material to the risk. Although Wilson was designated a general agent, there is no evidence showing any business done by him except at the city of Dallas, and the only services shown to have been performed by him in relation to this policy appear to have consisted in receiving and forwarding the application, countersigning and delivering the policy, collecting the premiums and, four years later, receiving and forwarding the proofs of claim of plaintiff concerning the illness for which, in presenting the proofs of claim, he sought compensation.

''One who has authority to take applications, receive and receipt for premiums, forward them, receive policies from the company, and deliver them after countersigning them, has no power to bind the company by a contract of insurance in any other way than by delivery of a policy issued by the company.'' (May on Insurance, 4th ed., sec. 126a.) ''A general agent, in the strict legal sense, is one who has all the powers of his principal as to the business in which he is engaged—an extent of authority not often conferred in insurance. In that business an agent is termed a general agent rather with reference to the geographical extent of his authority, in contradistinction to a local agent, who may have original powers, though exercising them within more restricted limits; and the general agent may appoint local and subagents, which a local agent cannot.'' (May on Insurance, sec. 126.) An insurance company, like any other principal, may limit the powers of its agents. (*Iverson* v. *Metropolitan Ins. Co.*, 151 Cal. 746, [13 L. R. A. (N. S.) 866, 91 Pac. 609].) Where this is done by clear and plain terms in the policy and the applicant accepts the policy, it becomes the contract between him and the company and he is charged with knowledge of its terms, among others, the limitations upon the power of the agent of the company. The authority of an agent to effect a waiver in the face of a limitation denying his power to waive warranties

or conditions is not vested in every agent who may represent the company. Unless such authority be given to some particular agent to do so, then, as a general rule, it is only agents of the company who are empowered to issue and deliver policies who may be regarded as having the power to waive conditions and forfeitures. As to the character of agents authorized to waive such conditions, the rule includes all persons empowered to conclude contracts of insurance without first referring the negotiations to their principals, such as those which have full power to effect contracts of insurance, to fix rates of premiums, to consent to changes, to make indorsements and to cancel policies. (*Sharman* v. *Continental Ins. Co.*, 167 Cal. 117, 124, [52 L. R. A. (N. S.) 670, 138 Pac. 708] ; *Enos* v. *Sun Ins. Co.*, 67 Cal. 621, [8 Pac. 379].)

Where the applicant for an insurance policy signs an application certifying to the truth of statements therein contained material to the risk and delivers it to the defendant, those statements become his solemn representations. And even though the statements be filled out by an agent upon a form furnished by the company, they are (at least in the absence of any fraud practiced upon the applicant) of the same binding force upon the applicant as though he had himself written them out in longhand and signed them. (*Westphall* v. *Metropolitan Life Ins. Co.*, 27 Cal. App. 734, 738, [151 Pac. 159].) "Of course, if the insured stipulate in his application that the insurer shall not be bound by any act done or statement made to or by the agent, not contained in the application, he cannot shelter himself under a plea of equitable estoppel, by reason of the agent's fraud or negligence. The knowledge by the agent of a fact not stated in the application in that case becomes entirely immaterial, unless possibly when the statement of the fact may have been fraudulently prevented by the agent." (May on Insurance, sec. 137.) In the case at bar no question of fraud or lack of good faith on the part of the company is presented. The plaintiff does not even deny that he personally read the application before he signed it. A copy of this application as signed by him was attached to and made part of the policy. "By accepting and retaining the contract without objection plaintiff was bound by its terms and cannot now be heard to say that he did not read it or know its terms." (*Madsen* v. *Maryland Casualty Co. of Baltimore*, 168 Cal. 204, 206, [42 Pac. 51, 52].) The fact that

the statements contained in the application, and which the evidence in this case shows to have been untrue, were material to the risk and are closely related to the very matter involved in plaintiff's claim herein, is beyond question. The further fact that the insurer exacted and the applicant gave a statement as to previous injuries to his eyes or defects of vision, proves that the parties considered and agreed that this matter was material. Having so agreed, the fact of its materiality is binding upon them. (*Westphall* v. *Metropolitan Life Ins. Co.,* 27 Cal. App. 734, [151 Pac. 159]; *McEwen* v. *New York Life Ins. Co.,* 23 Cal. App. 694, [139 Pac. 242].) ''A statement in a policy, of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty thereof.'' (Civ. Code, sec. 2607.) ''A breach of warranty, . . . where it is broken in its inception prevents the policy from attaching to the risk.'' (Civ. Code, sec. 2612.)

This policy, although countersigned and delivered by the agent at Dallas, was in fact issued from the office of the United States managers of the corporation, where the matter of accepting or refusing the application was determined. The recitals in the policy clearly indicate this fact, and there is no evidence or claim to the contrary. The fact that the policy was delivered to plaintiff through the agent to whom it had been sent and was required to be countersigned by him, is not sufficient to give him the general powers of the company in the face of the limitations written into the application and policy. Aside from the plaintiff's testimony that he had truly described his former illnesses to the agent when the application for policy was prepared, it is not claimed that the defendant ever received any information of the former illnesses of plaintiff to which we have referred, until he presented proofs of claim on account of the illness or injury to which this action relates. Upon the facts herein stated, and the law as above set forth, we conclude that the defendant has incurred no liability upon the policy.

Several other questions of some importance are presented in support of the appeal, but in view of our decision upon what we consider the main issue, we deem it unnecessary to discuss other phases of the case.

The judgment is reversed.

James, J., and Shaw, J., concurred.