[Civ. No. 3936. First Appellate District, Division One.—November 15, 1921.]

HAZEL F. LAYTON, Respondent, v. NEW YORK LIFE INSURANCE COMPANY (a Mutual Company), Appellant.

[1] LIFE INSURANCE—APPLICATION FOR POLICY—GOOD FAITH OF APPLICANT—NEGLIGENCE OF AGENT—ESTOPPEL OF INSURER—EXCEPTION.—The rule that when an applicant for a life insurance policy in good faith makes truthful answers to the questions contained in his application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy, is subject to the limitation that there must be no complicity on the part of the applicant, actual or implied.

[2] ID. — PREPARATION OF APPLICATION BY AGENT — KNOWLEDGE OF FALSITY OF ANSWER—SILENCE OF APPLICANT—VOID POLICY.—A policy of life insurance is void where the application and the certificate of the medical examiner falsely recited that the applicant had not consulted any physician for any ailment within five years, and the insured upon receipt of the policy, which had attached to it a copy of such application and of such certificate, failed to notify the company of the falsity of such recitals, notwithstanding the application was prepared by the medical examiner, since the applicant by his silence approved the act of such examiner and thereby made him his agent as well as the agent of the company.

APPEAL from a judgment of the Superior Court of Mendocino County. J. Q. White, Judge. Reversed.

The facts are stated in the opinion of the court.

McCutchen, Olney & Willard, McCutchen, Willard, Mannon & Greene and James H. McIntosh for Appellant.

Robert Duncan and Thomas & Thomas for Respondent.

WASTE, P. J.—The plaintiff, as beneficiary, brought this action upon a policy of insurance in the sum of $2,000,

1. Effect of honest mistake in answer as to health of insured warranted by him to be true, note, 15 L. R. A. (N. S.) 1277.

issued by the defendant on the life of Archie B. Layton, her husband. Judgment was rendered in her favor, from which the defendant Insurance Company appeals, relying upon the two defenses interposed in the court below and reasserted here: First, that the insured was not in good health at the time the first premium was paid and the policy of insurance delivered, and never again was in good health during his lifetime; and, second, that it is entitled to rescind, and has rescinded, the contract of insurance because of written misrepresentations made by the insured in his application, which became a part of the policy.

In response to the issues tendered by these defenses, the lower court found that at the time of the delivery of the policy and payment of the first premium, the insured was in good health, and was not at any time prior or subsequent thereto suffering from, or afflicted with, *carcinoma mediastinum* (a species of cancer), or any form of cancer whatever, from which appellant contends the insured subsequently died, and that he was not at the time of the payment of the first premium afflicted with, nor suffering from, the malady which subsequently caused his death. It also found that at the time of the examination by the medical examiner of the defendant company, the decedent made true and correct statements concerning matters relative to his health, and did not make any false representations of any kind for the purpose of deceiving or defrauding the defendant, but that the medical examiner of the defendant Insurance Company, with full knowledge of the facts, and in his own handwriting, wrote down the alleged erroneous answers to the questions.

There is no conflict in the record of the principal facts of the case. Layton made application to the appellant for insurance on his life September 25, 1917, and was examined by the medical examiner of the company at Ukiah the next day. He received the policy October 11th, following, and paid the first premium within a day or two thereafter. He died about six months later. About a year before the issuance of the policy, Layton visited Dr. Rea at Ukiah, and asked him to remove a lump from his throat, which bothered him a great deal with pains radiating up the side of his neck. The doctor examined "the growth," as he described it, but not being able to exactly determine its size, refused

to remove it unless the patient went to the hospital. That was not done, and the operation was not performed. During the month of January following, and some eight months before applying for insurance, Layton consulted Dr. Van Allen about the lump, or swelling, on his throat. The doctor inserted a local anesthetic and made a small incision, removing therefrom what appeared to be several pieces of the sac of the cyst. He then drew the incision together with stitches, and continued for some time to treat and dress the wound. It was slow in healing and "broke out again a time or two," discharging a serum which necessitated the insertion of a small curette or drain. The treatment lasted for one month, during which the doctor treated the patient some fourteen times. Shortly after ceasing his visits to Dr. Van Allen, Layton was taken to Dr. Rea again by his wife. He was very weak, suffering from a very serious hemorrhage from the incision on his neck, which Dr. Rea stopped. During the month of July following, Dr. Cleland, who was the medical examiner of the defendant Insurance Company, removed a piece of emery steel from Layton's eye, and on three occasions treated a small ulcer on his neck at about the same spot previously treated by Dr. Van Allen and Dr. Rea. On August 10, 1917, about one and a half months before making application, Layton again visited Dr. Van Allen. He complained of a "choking sensation like as though something closed up the throat." The doctor did not regard this as serious, and administered a simple remedy.

All of these consultations and treatments—all but one within nine months of the date of the application—are undenied. The doctors themselves testified to the facts and to the dates. Yet, in the application for insurance it is represented that no physician had been consulted by the insured for any ailment within five years. Just how that occurred is best shown by the certificate of the medical examination and by the testimony of Dr. Cleland, the medical examiner at Ukiah for the Insurance Company. Layton was asked several questions as to whether or not he had suffered from certain specified ailments, or disease, or had ever had any accident or injury, to all of which he answered no. The examination proceeded to question 9-d in the application,

which reads as follows: "Have you consulted any physician for any ailment or disease not included in your above answers?" Layton's reply to the doctor was, in substance, " 'You remember that I was here in your office; you treated this sore on my neck, and you remember you knew that the trouble was referred to in my conversation I had with Dr. Rea in regard to it previously.' I [the doctor] said, 'Yes, I think I know about that; are you all right from it now?" He [Layton] said, 'Yes, I think it is all right; don't give me any trouble.' " Dr. Cleland thereupon wrote down the answer "No." When the doctor asked Layton question 9-e, "What physicians, if any, not named above, have you consulted or been treated by in the last five years, and for what illness or ailment?" Layton replied: "Only in regard to this thing on my neck which you treated and Dr. Van Allen treated, and Dr. Rea treated." Dr. Cleland thereupon wrote down the answer "none."

By the terms of the policy of insurance delivered to plaintiff's husband, the policy itself and the application therefor, copy of which, including the questions and answers making up the medical examination, was attached to the policy, constituted the entire contract between the company and the insured. Layton over his own signature declared that he had carefully read each and all of the answers given to the medical examiner, that each was written as made by him, and that each was full, complete, and true. The statements contained in the application thereby became his solemn representations and of the same binding force upon him as though he had himself written them out in his own handwriting and signed them. (*Westphall* v. *Metropolitan Life Ins. Co.,* 27 Cal. App. 734, 738 [151· Pac. 159].) It needs no citation of authority to support the rule that misrepresentation or concealment of the facts relative to the health of those whose lives are insured are peculiarly fatal to contracts of life insurance, because the companies necessarily rely upon the statements and acts of the insured in making the contracts. (See *Equitable Life Assur. Soc.* v. *McElroy,* 83 Fed. 631 [28 C. C. A. 365]; *Whitney* v. *West Coast Life Ins. Co.,* 177 Cal. 74, 80 [169 Pac. 997].) [1] But it has been held in this state that when the insured in good faith makes truthful answers to the questions contained in the applica-

tion, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy. The acts of the' agent, whether he is a general agent with power to issue policies, a soliciting agent, or merely a medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, even though it is so stipulated in the application. (*Lyon* v. *United Moderns*, 148 Cal. 470, 475 [113 Am. St. Rep. 291, 7 Ann. Cas. 672, 4 L. R. A. (N. S.) 247, 83 .Pac. 804] ; *Westphall* v. *Metropolitan Life Ins. Co.*, 27 Cal. App. 734, 739 [151 Pac. 159].) Notwithstanding the justice of this rule, it is the statement of only a part of the law of the case, and is subject to the limitation that there must be no complicity on the part of the insured, actual or implied. The element of continued good faith enters into such transactions. [2] The policy of insurance in this case was almost immediately delivered to Layton. It was his duty to read it, and we may assume that he did so. He knew, therefore, that the application and the certificate of the medical examiner, each of which was an integral part of the policy and the consideration therefor, contained two very material and vital statements that were false. His legal and moral duty was then to notify the company of the fraud that had been perpetrated. By his silence he virtually approved of the act of the medical examiner and became responsible for it. By his conduct he made Dr. Cleland his agent as well as the agent of the company, and the forfeiture of the policy is the result. (*Goldstone* v. *Columbia Life etc. Co.*, 33 Cal. App. 119, 123 [164 Pac. 416].) To the same effect is the decision of our supreme court in *Madsen* v. *Maryland Casualty Co.*, 168 Cal. 204 [142 Pac. 51], and the opinion of Mr. Justice Field in *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519 [29 L. Ed. 934, 6 Sup. Ct. Rep. 837], which seems to be the leading case on the subject, and which was affirmed in *Mutual Life Ins. Co.* v. *Hilton-Green*, 241 U. S. 613, 623, 624 [60 L. Ed. 1202, 36 Sup. Ct. Rep. 676, see, also, Rose's U. S. Notes]. Where one holds a policy, referring in apt terms to the warranties and representations contained in the application annexed, for a reasonable time, he is conclusively presumed to know

the contents of the contract, and the untruthful answers plainly written in the application. He is thereby estopped to assert that he had no knowledge on the subject. (*Modern Woodmen* v. *Angle,* 127 Mo. App. 94, 116 [104 S. W. 297, 304].) Even though the false answers were written by the examiners of the company without the knowledge of the assured, but the latter has the means at hand to discover the falsehood, and negligently omits to use them, he will be regarded as an instrument in the perpetration of the fraud, and no recovery can be had on the policy. (*Forwood* v. *Prudential Ins. Co.,* 117 Md. 254, 259 [83 Atl. 169, 171]; *Providence Life Assur. Soc.* v. *Reutlinger,* 58 Ark. 528, 543 [25 S. W. 835, 840].)

Because of the inevitable conclusion we have reached, that the plaintiff may not recover in the case, for the reason we have already advanced concerning the invalidity of the policy of insurance on account of the untruthfulness of the answers contained in the application, we deem it unnecessary to consider at length the contention of the appellant that the policy never became effective because the insured was not in good health when it was delivered to him, and when he paid the first premium, as he was required to be by the terms of the policy in order to render the insurance effective. The lower court found that at that time Layton was suffering from a temporary indisposition. There is some evidence in the record on which respondent relies to support this finding, but the fact remains that Layton was receiving sick benefits from two lodges when he accepted the policy and paid the first premium, and was ill and was not working at the time. He had suffered for a year, at least, with the persistent affliction already referred to, and which was described by the doctors as a "stiff neck," or a "gathering," or a "lump," or "ulcer," in or upon his neck. The immediate cause of his disease, given in the proofs of death furnished the insurance company by the plaintiff, was *carcinoma* of the *mediastinum,* or cancer involving the space between the lungs. Dr. Rea, his attending physician at that time, who was familiar with the case, testified that in his opinion there was direct connection between the trouble Layton had on his neck and the cancer which caused his death; that the growth on the neck was a secondary result of the primary trouble in the decedent's

chest. In our opinion the history of the case of decedent, and other evidence in the record, would tend to overthrow the conclusion reached by the lower court, were we called upon to pass upon the sufficiency of the evidence to support the finding. But we deem it unnecessary to consider that question any further. The finding of the lower court on the issue of fraud by reason of the false answers in the application is not supported by but is contrary to the evidence, for which reason the case must be reversed.

In the proof of death furnished by respondent to the appellant, the immediate cause of death of the insured was specified as *carcinoma* of the *mediastinum*. The Insurance Company, basing its answer upon the information thus furnished to it by the plaintiff, pleaded in its answer that Layton was not in good health at the time of the receipt of the policy, but, on the contrary, was afflicted with a malady "which thereafter caused his death, to wit, *carcinoma* of the *mediastinum,* a form of cancer." There was some conflict in the testimony as to the exact nature and name of the malady. At the conclusion of the trial, appellant asked leave to file an amendment to its answer to conform to the proof in this regard. The court denied the application to amend. Notwithstanding the great liberality allowed to trial judges in matters of this kind, we think the amendment should have been allowed.

Because the appellant, upon discovering the facts relating to the illness of the insured, and the alleged fraud in the answers contained in the application, tendered to the plaintiff the sum of $66.36, the amount of premiums paid on the policy of insurance, and later deposited that sum in court, it would have us remand the case to the lower court with directions to enter a judgment in favor of plaintiff for that amount. Were we to do so, we would be, in effect, making new findings for the lower court, which is beyond our authority. The judgment is reversed.

Richards, J., and Kerrigan, J., concurred.