[L. A. No. 15143.   In Bank.—June 21, 1937.]

WILLIAM R. TELFORD, Respondent, v. NEW YORK
   LIFE INSURANCE COMPANY (a Corporation), Ap-
   pellant.

Meserve, Mumper, Hughes & Robertson and E. Avery Crary for Appellant.

Cannon & Callister and David H. Cannon for Respondent.

THE COURT.—The plaintiff sued as beneficiary to recover on a $1,000 policy of insurance issued by the defendant on the life of Catherine Telford, his deceased wife. The company, by answer and cross-complaint, defended on the ground of misrepresentations and concealments avoiding the contract. The plaintiff had judgment, from which the defendant has appealed.

In December, 1932, Catherine Telford made application to the defendant for a policy of life insurance in the sum of $1,000. In the course of the examination of the insured by the defendant's medical examiner she gave a negative answer to the question whether she had ever been under observation or treatment in any hospital, asylum or sanitarium. To the question whether she had ever had any accident or injury or undergone any surgical operation, she answered that she had had her appendix removed in 1920 with good results and no complications. These answers were written down by the medical examiner and the insured signed the statement containing them, which became part II of the application, designated "Answers to Medical Examiner". Above her signature was the declaration that she had carefully read the answers, that each was written as made by her, and each was full, complete and true. A photostatic copy of that portion of the application was attached to the policy when it was delivered. On the reverse side of part II of the application was the "Medical Examiner's Report", which was a certification of facts found from his examination, including the insured's age, which was stated to be 48 years. On this

statement, in connection with the history of her pregnancies and in answer to the question, Has she passed the climacteric? the medical examiner wrote: "Applicant has almost passed through her climacteric during which she has had very little disturbance." This answer did not appear on the copy of that portion of the application which was attached to the policy.

The insured died in March, 1933. The cause of death is not shown. The proofs of death and other testimony admitted on the trial disclosed that in 1929 the insured was confined in a hospital at Salt Lake City for a period of ten days when she had her left breast removed; also that she was admitted as an "out patient" at the Los Angeles County Hospital in August, 1931, and there received examinations, advice and treatments on various days, making in all about 44 visits between that time and the date of her examination by the defendant's medical examiner. The court found that the insured did not know that she was being treated at the county hospital for any ailment or disease that was not incident to her menopause, and did not know that she was suffering from any malignancy or cancer and from any of the diseases set out in the cross-complaint, except that she knew that she had her left breast removed in 1929. In respect thereof, however, the court also found that in the course of her medical examination the left upper portion of her body was exhibited to the medical examiner when he was taking soundings of her heart. The court made a general finding that the insured made no false or untrue representations, nor any representations with the intent to deceive the defendant, and that the defendant was not in fact deceived thereby.

The burden of the appeal is that the findings are not supported by the evidence.

A false representation or a concealment of fact whether intentional or unintentional, which is material to the risk vitiates the policy. The presence of an intent to deceive is not essential. (Civ. Code, secs. 2562, 2580, now secs. 331, 359, Insurance Code; *Sun Mutual Ins. Co.* v. *Ocean Ins. Co.,* 107 U. S. 485 [1 Sup. Ct. 582, 27 L. Ed. 337]; *Whitney* v. *West Coast Life Ins. Co.,* 177 Cal. 74 [169 Pac. 997]; *Maggini* v. *West Coast Life Ins. Co.,* 136 Cal. App. 472 [29 Pac. (2d) 263]; *Kahn* v. *Royal Indemnity Co.,* 39

Cal. App. 180 [178 Pac. 331]; *Westphall* v. *Metropolitan Life Ins. Co.,* 27 Cal. App. 734 [151 Pac. 159]; *Anderson* v. *Aetna Life Ins. Co.,* 265 N. Y. 376 [193 N. E. 181]; *Lyttle* v. *Pacific Mutual Life Ins. Co.,* 72 Fed. (2d) 140; *Aetna Life Ins. Co.* v. *Bolding,* 57 Fed. (2d) 626.)

The facts concerning the course of hospital treatment received by the insured prior to the application for the policy and the removal of her left breast in 1929 were material to the risk. The defendant was entitled to rely on answers which negatived any such treatment or surgery in issuing the policy, and the evidence shows that it did rely thereon. ▮ However, it was one of the provisions of the policy that no statement of the applicant should avoid the policy, or be used in defense to a claim under it, unless it was contained in the written application and a copy of the application endorsed upon and attached to the policy when delivered. One of the answers to the examiner's inquiries was that the insured had almost passed through her climacteric with very little disturbance. The evidence fully supports the finding that the insured had no reason to believe that her visits to the county hospital were occasioned by any other condition than her menopause. The written statement in that respect was not included in that portion of the application which was attached to the policy, and failure to make a full disclosure concerning the treatments and observation may not therefore afford a basis for a defense by the defendant. For the additional reason that the insured was ignorant of any condition other than disturbances incident to the menopause, the defendant may not rely upon her failure to make such disclosure. (*Travelers Ins. Co.* v. *Byers,* 123 Cal. App. 473, 481 [11 Pac. (2d) 444].)

▮ The more serious problem is presented by the failure of the insured to reveal the fact of the operation undergone in 1929. The state of the evidence precludes this court from questioning the finding that the portion of the body from which the breast was removed was exposed to the examiner when he took soundings of the insured's heart and that he therefore knew that the left breast had been removed. But in giving her answers to inquiries the insured was not entitled to rest supinely upon the supposition that the medical examiner would observe that condition or if he did that he

would include a statement of his observation in his report. It was not a condition which the insured was likely to forget when asked respecting scars or other marks and prior surgical history, and when facing the examiner partially exposed. Mere knowledge of the scar by the defendant did not excuse a false answer to questions designed to afford a source of information concerning the reason for the removal of the breast, which unquestionably was material to the risk. Section 2564 of the Civil Code does not release the insured from giving truthful answers to questions concerning facts known to the insured. The defendant was entitled to rely on representations made in answer to such inquiries. The question arises, what is the effect of the actual knowledge of the medical examiner under the facts presented? The court's finding that the defendant was not actually deceived by the insured's incomplete answer was based on the imputation of the knowledge acquired by the medical examiner from his physical examination of the insured.

The courts in this state have adopted the view held by the United States Supreme Court as announced in the case of *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613 [36 Sup. Ct. 676, 60 L. Ed. 1202]. That and other decisions recognize that the requirement of fair dealing is laid on both parties to the contract. This requirement entails a duty on the part of the insured to read the contract and the application in accordance with her representations and to report to the company any misrepresentations or omissions. There is no showing in the present case that the failure to read the application was due to any act of the defendant and under the decisions the facts herein do not make an exception so as to excuse the insured's failure to read it. By neglecting to inform the company of the material omissions, the insured became responsible for such misrepresentations or omissions. (*Layton* v. *New York Life Ins. Co.,* 55 Cal. App. 202 [202 Pac. 958]; *Goldstone* v. *Columbia Life etc. Co.,* 33 Cal. App. 119 [164 Pac. 416]; cf. *Madsen* v. *Maryland Cas. Co.,* 168 Cal. 204 [142 Pac. 51]; *Mutual Life Ins. Co.* v. *Hilton-Green, supra; Zeidel* v. *Connecticut General Life Ins. Co.,* 44 Fed. (2d) 843; *Ryan* v. *World Mut. Life Ins. Co.,* 41 Conn. 168 [19 Am. Rep. 490]; *New York Life Ins. Co.* v. *Rigas,* 117 Conn. 437 [168 Atl. 22, 91 A. L. R. 1122]; *Sun Fire Office*

v. *Wich,* 6 Colo. App. 103 [39 Pac. 587] ; *Reserve Loan Life Ins. Co.* v. *McCoy,* 15 Fed. Supp. 933.)

There are no circumstances in the present case which could be said to indicate that the defendant has waived the false answer of the insured by knowledge of its falsity, except the inference afforded by the exposure to the defendant's medical examiner of a portion of the insured's body. Under the decisions the effect of this imputation of knowledge is overcome by the failure of the insured to conform to the requirement of fair dealing as a result of which she must be deemed to have adopted and approved as her own act the examiner's omission to convey the knowledge to the defendant.

This case is distinguishable from the case of *Bayley* v. *Employers' etc. Corp.,* 125 Cal. 345 [58 Pac. 7], where there was knowledge of the falsity of the answer because all the facts and circumstances attendant thereon were peculiarly within the possession of the insurer as well as of the insured. The present case is not affected by such cases as *Moulor* v. *American Life Ins. Co.,* 111 U. S. 335 [4 Sup. Ct. 466, 28 L. Ed. 447], and *Schwartz* v. *Royal Neighbors, etc.,* 12 Cal. App. 595 [108 Pac. 51], where the good faith of the insured in expressing an *opinion* as to a certain condition was the essential factor involved. In the present case it was the condition and history, not the insured's opinion respecting it, which should have been disclosed. (Cf. *Illinois Banker's Life Assn.* v. *Theodore,* 44 Ariz. 160 [34 Pac. (2d) 423; Id., 47 Ariz. 314, 55 Pac. (2d) 806, 810] ; *Schwarzbach* v. *Ohio Valley Protective Union,* 25 W. Va. 622 [52 Am. Rep. 227].) Nor can the decision in the case of *Weiss* v. *Policy Holders Life Ins. Assn.,* 132 Cal. App. 532 [23 Pac. (2d) 38], alter our conclusion. There the particular circumstance of the illiteracy of the insured excused her failure to read the application. The affirmance of the judgment for the plaintiff in the case of *Lyon* v. *United Moderns,* 148 Cal. 470 [83 Pac. 804, 113 Am. St. Rep. 291, 7 Ann. Cas. 672, 4 L. R. A. (N. S.) 247], is based on the application of the general rule that the acts of the agent are the acts of the insurer in the absence of any bad faith or fault on the part of the insured to create an exception and an adoption by the insured of the agent's acts. Language in that case which indicates that the exception does

not apply where the insured has no actual knowledge of the contents of the paper when he signed it is not controlling in view of the foregoing later decisions and in a case where the insured represents that he has read the contents of the application.

The insured did not conform to the provisions of the contract. The trial court's finding to the contrary is not supported by the evidence and the lack of support for that finding necessitates a reversal.

The judgment is reversed.