[S. F. No. 11239. In Bank.—May 21, 1925.]

## GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, etc., Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and FRANK VESSELS et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — INSURANCE CARRIER — DELIVERY OF POLICY—FINDINGS.—Where a policy of liability insurance was delivered by insurance agents to another firm with instructions that it be held in the office of the latter until payment of the premium was made, and the payment was not made, the whole course of the employer indicating that he had studiously avoided binding himself by any agreement or promise either oral or in writing to accept the policy or to pay the premium thereon prior to the accident in question, a finding by the Industrial Accident Commission that the policy was delivered to the parties holding it as the agent of the employer, is not sustained by the evidence, although the firm holding the policy acted as agent of the employer for the limited purpose of ascertaining the cost of the insurance.

[2] ID.—PAYMENT OF PREMIUM AFTER ACCIDENT—FINDINGS.—Where a policy of workmen's compensation insurance was delivered by the agent to another firm with instructions to deliver it to the employer only after the payment of the premium, and the evidence tended to show that the employer paid the premium and received the policy on the same afternoon on which the accident happened, without disclosing the fact of the happening of the accident, the Industrial Accident Commission should have made a finding upon the claim of the insurance carrier that the employer had actual knowledge at the time he gained possession of the policy that the injuries had been previously suffered, which he did not disclose,

---

2. Duty to notify insurer of facts which develop after submission of application but before delivery of policy, notes, 8 L. R. A. (N. S.) 983; 39 L. R. A. (N. S.) 951.

and of which the carrier had no knowledge, as the carrier would not be liable if such facts were found to be true, although the employer would be.

[3] ID.—SECTIONS OF CODE—INCLUSIVE IN CONTRACT.—Sections 2527, 2531, 2561, 2562, 2563, 2565, 2569, and 2577 of the Civil Code form a part of every contract of insurance to become effective by virtue of the laws of this state.

[4] ID.—CONTRACT OF INSURANCE—COMPLETION—TIME.—The time that a contract of insurance is completed is fixed by the terms of section 2577 of the Civil Code.

[5] ID.—FRAUD—CONCEALMENT OF MATERIAL FACTS—MISREPRESENTATION—REMEDIES.—Material facts intentionally concealed or false representations made in reference to them with intent to mislead the insurer is fraud, which, at his option, avoids the policy; and where it is provided that a concealment will warrant the rescission of a contract of insurance, rescission is not an exclusive remedy, and the insurer may set up the concealment in an action on the policy.

[6] ID.—NOTICE OF REPUDIATION.—Notice of repudiation of the contract of insurance and a seasonable return of the premium to the insured was sufficient to inform the latter that the insurer did not recognize the contract as valid or binding.

[7] ID.—CONCEALMENT OF MATERIAL FACT—MISREPRESENTATION.—The concealment of a material fact and a misrepresentation as to such fact is in effect the same thing—fraud.

[8] ID.—RIGHTS OF DEPENDENTS—VOID CONTRACT.—The dependents of an employee have no cause of action against an alleged insurance carrier upon a contract which is void or voidable as to the employer.

[9] ID. — INDUSTRIAL ACCIDENT COMMISSION — JURISDICTION.—The Industrial Accident Commission is vested by constitutional and legislative power to hear and determine every issue in a claim made against an alleged insurance carrier, including the validity of the policy and a claim of fraud alleged in its procurement, and the parties are not required to invoke either a court of law or of equity in the determination of said questions.

(1) 32 C. J., p. 1127, n. 59.   (2) 32 C. J., p. 143, n. 70.   (3) 32 C. J., p. 1162, n. 24.   (4) 32 C. J., p. 1285, n. 12.   (5) 32 C. J., p. 1271, n. 12, 13.   (6) 32 C. J., p. 1248, n. 89.   (7) 26 C. J., p. 1072, n. 24.   (8) 32 C. J., p. 1314, n. 45.   (9) Workmen's Compensation Acts, C. J., p. 114, n. 11.

4.  See 14 Cal. Jur. 489.
5.  See 14 Cal. Jur. 486; 14 R. C. L. 1023.
6.  See 14 Cal. Jur. 437.

APPLICATION for a Writ of Certiorari to review an order of the Industrial Accident Commission awarding compensation for the death of an employee. Award set aside.

The facts are stated in the opinion of the court.

Alfred C. Skaife and Joe Crider, Jr., for Petitioner.

Warren H. Pillsbury for Respondents.

SEAWELL, J.—This is a petition for a writ of *certiorari* to review an award made by the Industrial Accident Commission in favor of the dependents of a deceased employee. Harold Lilenquist, an oil worker, died on August 12, 1922, from injuries received on that day while engaged in an attempt to install a heavy stationary steam boiler by means of a jack or screw. The injuries were received and death occurred near Santa Fe Springs, county of Los Angeles. One Frank Vessels was the employer of the decedent. At the time of his death Lilenquist was of the age of twenty-three years and the husband of Alice Lilenquist and the father of Harold A. Lilenquist, a minor, both of whom are joined as respondents herein. It is stipulated that said injuries were the proximate cause of the death of said Harold Lilenquist and that they arose out of and were received while he was performing services in the due course of his employment and therefore compensable under the provisions of the Workmen's Compensation, Insurance and Safety Act (Stats. 1913, p. 279) of this state. The only question that was presented to the Commission, or raised here, is whether or not the petitioner, General Accident, Fire and Life Assurance Corporation, Ltd., of Perth, Scotland, was, on the day of the fatal accident, the insurance carrier of said Vessels.

Vessels, the employer, was a contractor. His residence was at Huntington Beach, and the scene of his employment at the time of the accident was Santa Fe Springs, distant about twenty-three miles from Huntington Beach, where he had workmen employed in installing machinery to be used in the production of oil. He made daily trips by automobile from his residence to the place where the accident oc-

curred.  He was impressed with the importance of industrial accident coverage, but being hard-pressed for finances he was considering whether he would be able to pay the premium on a policy of insurance.  He was also apprehensive that a declining oil market might at any moment cause a suspension of the industry upon which he depended for employment, thereby rendering an outlay of money for an insurance policy an unnecessary expenditure.  However, on or about the twenty-sixth day of July, 1922, he visited the office of Huston, Suter & Huston, insurance agents, brokers, and solicitors, doing business at Huntington Beach, with the apparent purpose of making inquiry as to the cost of a policy of insurance.  This entire business transaction was conducted with A. E. Suter, a member of said firm.  The general agent of the petitioner was Geo. T. Mahana & Co., whose offices were at Los Angeles.  A business connection existed at that time, and for some time prior thereto had existed, between Geo. T. Mahana & Co. and the firm of Huston, Suter & Huston.  While the latter did not write policies covering industrial hazards, it accepted and forwarded applications for this line of insurance to Geo. T. Mahana & Co., and received a commission on all policies issued through its procurement.  On Vessels' first visit to the offices of Huston, Suter & Huston, July 26, 1922, the subject of taking out a policy was discussed by him and Suter.  The latter did not then know the amount of the premium that would be required to carry the policy Vessels had in mind.  Suter, with the assistance of Vessels, filled out a form of declaration, unsigned, which corresponds with the applications used in ordinary insurance business.  The letter which accompanied the declaration was written by Suter and was as follows:

> "George T. Mahana Co.,
> "Pacific Finance Bldg.,
> "Los Angeles, Calif.

"Gentlemen:—

"As per the enclosed declaration which we have made out roughly, we desire to have a compensation policy, or rather the party desires to know what the rate as well as the minimum premium deposits will be.

"Kindly let us know by return mail, at the same time let us know if anything else is necessary to be filled in on the application.

"Yours truly,

"Huston, Suter & Huston,

"By E. A. Suter.

"P. S. Please return copies of the enclosed form for our files so that in case he desires us to write the insurance that we can have him sign up. EAS. EAS/A Encs."

On July 28, 1922, a policy complete in form and detail was received by Suter from the general office at Los Angeles. The premium payable thereon was $60 per annum. Suter at once notified Vessels of the receipt of the policy and the latter visited the offices of Huston, Suter & Huston but did not consent to accept the policy. It was understood that the policy should be held by Suter for a few days to give Vessels further time for making a decision as to whether he would pay the premium and accept the policy. It was explained that the policy was forwarded without a request from anyone to do so, with the view of saving time and labor in the event that Vessels should decide to accept it. On August 10, 1922, Suter wrote the following letter to his principal, Geo. T. Mahana & Co., for further instructions:

"Since the time you mailed the policy to me Mr. Vessels was in and says that business has fallen off so owing to the recent cuts in the price of oil that he did not know whether he would have work for the men, and asked me if I would hold the policy for a few days which I agreed to do; however, since he has not been in I thought that I had better write the circumstances and have you advise us."

On the following day Geo. T. Mahana & Co. replied as follows:

"Answering your favor of the 10th, we wish to advise that it is all right for you to hold the above policy in your office for a period of not exceeding sixty days so the assured may make up his mind whether or not he wants to continue the same.

"You understand the premium is based upon a payroll and if the assured expects to have $1000 worth of payroll any time during the policy period he might as well take the policy now and pay the premium for it. . . . "

On the afternoon of the following day, August 12th, at about the hour of 3:40 o'clock, Lilenquist received the injuries from which he died. On the afternoon of the same day that Lilenquist received said injuries Vessels presented himself at the office of Huston, Suter & Huston and paid the $60 premium by check. Suter then and there delivered to him the policy of insurance. The conversation had at this visit was brief; no mention was made of an accident having occurred.

Two days after the accident, to wit, August 14, 1922, Vessels appeared at the office of Huston, Suter & Huston, and notified Suter of the accident. Suter remarked to him that it "was pretty close figuring." Nothing further of consequence was said. On August 26th, at the request of petitioner, Suter drew a check in favor of Vessels for $60, the amount of the premium, and mailed it to Vessels. A copy of the letter which accompanied the check is not in the record, but the testimony is that it was to the effect that petitioner denied or repudiated any liability, by reason of the accident having occurred prior to the acceptance of the policy, and returned the premium. This check was never returned by Vessels or presented for payment. It appears that Vessels sent the check to Mrs. Lilenquist. The record does not disclose what disposition she made of it.

It was the claim of petitioner, and evidence was offered tending to support this contention, that the premium was not paid nor was the policy accepted or agreed to be accepted by Vessels until after Lilenquist had sustained the injuries which resulted in his death, and that Vessels had actual knowledge at the time he gained possession of said policy that the injuries had been previously suffered, and petitioner was without such knowledge, and had no opportunity to inform itself on the subject. It is contended that it was the duty of Vessels to communicate to petitioner the existence of said facts which were known to him, but that he fraudulently concealed the same from petitioner and its agent. It is further contended that inasmuch as the injuries occurred before the premium was paid or the policy was delivered or accepted, that the subject matter of the contract had ceased to exist, or at least had been materially affected by said casualty. Other objections were made, but

they are necessarily included in the main contentions just stated.

In addition to making a finding to the effect that the employer, Vessels, and the employee, Lilenquist, were subject to the provisions of the Workmen's Compensation, Insurance and Safety Act of this state and that the respondent wife and child were his dependents, all of which was stipulated to by counsel, the Commission found that petitioner was the insurance carrier of said employer at the time the injuries were inflicted, and grounded its findings as to liability on the theory that the delivery of the policy to Suter, on or about July 28, 1922, was a delivery to Vessels. The sole finding upon which liability is imputed to petitioner as the insurance carrier is as follows:

"2. On or about the 27th day of July, 1922, the defendant, General Accident, Fire and Life Assurance Corporation, executed a certain policy of Workmen's Compensation Insurance, in favor of the defendant, Frank Vessels, at the special instance and request of said Frank Vessels, communicated to said General Accident, Fire & Life Assurance Corporation by Huston, Suter & Huston, who were at said time agents of said Frank Vessels, and not agents of said defendant, General Accident, Fire and Life Assurance Corporation, and prior to the 12th day of August, 1922, the said General Accident, Fire and Life Assurance Corporation delivered said policy to Frank Vessels, by delivering said policy to said Huston, Suter & Huston, who were at the time of said delivery, agents of defendant Frank Vessels, and not agents of defendant General Accident, Fire & Life Assurance Corporation. At the time of the sustaining of said injury by the employee, therefore, the employer's insurance carrier was General Accident, Fire & Life Assurance Corporation, and the employer and the employee were subject to the provisions of the Workmen's Compensation, Insurance and Safety Act of 1917."

No finding was made, although the issue was pressed by petitioner before the Commission, as to whether the accident occurred prior to the payment of the premium, and, if so, whether the accident was known to Vessels prior to said payment and that fact was by him concealed from Suter. [1] Clearly the finding to the effect that the delivery of

the policy to Huston, Suter & Huston was a delivery to Vessels is not supported by any evidence in the case. This is the sole finding upon which petitioner's liability is predicated. The firm of Huston, Suter & Huston was the agent for Vessels only for the purpose of obtaining information as to the cost of the insurance. Beyond this it was not authorized to go. Vessels at no time before the accident occurred assumed liability for the payment of the premium. He did not sign the declaration that was forwarded to petitioner. It cannot be contended that Vessels, so long as the premium remained unpaid, could have compelled delivery of said policy. No such contention is made. His whole course of conduct is conclusive of the fact that the policy in the hands of Suter was regarded by him as being in the possession of petitioner. He studiously avoided binding himself by any agreement or promise, either oral or in writing, to accept the policy or pay the premium thereon. No claim was or could be made that credit was to be extended. The policy, by the instructions of petitioner, was to be held in the office of Suter until payment of the premium was made. The finding to the effect that a delivery to Huston, Suter & Huston was an absolute delivery to Vessels cannot be sustained without doing violence to the plain intent and understanding of all the parties to the transaction. No agency having been shown to exist between Huston, Suter & Huston and Vessels, except for the limited purpose of ascertaining the cost of insurance, and it clearly appearing that Huston, Suter & Huston was the agent of petitioner for the collection of the premium and the delivery of the policy in the event that it should be accepted, the finding of the Commission that the forwarding of the policy to Suter under the specific instructions of the insurer, which were to control delivery, and which were not complied with by Vessels, was a delivery to Vessels, is not supported by the evidence. [2] This being true, it follows that the Commission should have found upon the issue whether or not the policy was obtained by fraudulent concealment of a material fact on the part of Vessels under such circumstances as the law makes it the duty of a person similarly situated to disclose to the other who has no knowledge of such fact or reason to believe that it exists. If the Commission should find the facts to be as contended for by

petitioner such finding would constitute a valid ground of defense to the demand of claimant as against petitioner. Vessels, however, would be liable.

The several sections of the Civil Code pertinent to the issues of the case provide:

"Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability, arising from an unknown or contingent event." (Civ. Code, sec. 2527.)

"Any contingent or unknown event, whether past or future, which may damnify a person having an insurable interest, or create a liability against him, may be insured against, subject to the provisions of this chapter." (Civ. Code, sec. 2531.)

"A neglect to communicate that which a party knows, and ought to communicate, is called a concealment." (Civ. Code, sec. 2561.)

"A concealment, whether intentional or unintentional, entitles the injured party to rescind a contract of insurance." (Civ. Code, sec. 2562.)

"Each party to a contract of insurance must communicate to the other, in good faith, all facts within his knowledge, which are or which he believes to be material to the contract, and which the other has not the means of ascertaining, and as to which he makes no warranty." (Civ. Code, sec. 2563.)

"Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." (Civ. Code, sec. 2565.)

"An intentional and fraudulent omission, on the part of one insured, to communicate information of matters proving or tending to prove the falsity of a warranty, entitles the insurer to rescind." (Civ. Code, sec. 2569.)

"The completion of the contract of insurance is the time to which a representation must be presumed to refer." (Civ. Code, sec. 2577.)

[3] The foregoing sections form a part of every contract of insurance to become effective by virtue of the laws of this state. They furnish sufficient authority to sustain

petitioner's right to have the issue raised by it determined by the Commission.

Applying the test as to the materiality of the facts which the foregoing code sections require must, in good faith, be communicated by one of the parties of a contract to the other, to the facts of this proceeding, little room is left for doubt as to the influence the accident would have had upon the mind and consequent action of the insurer had it been informed by Vessels that a compensable injury had occurred to one of his employees immediately prior to his offer to complete the contract.

[4] The time that a contract of insurance is completed is fixed by the terms of section 2577 of the Civil Code. In *Security Life Ins. Co.* v. *Booms,* 31 Cal. App. 119 [159 Pac. 1000], which was an action to recover upon a policy of life insurance, the same general principle of law which we are now considering was before the district court of appeal for determination. The rule making it the duty of an applicant for insurance to disclose material changes which may have occurred pending negotiations and the materiality thereof as affecting the other party is thus stated:

" 'The completion of the contract of insurance is the time to which a representation must be presumed to refer.' (Civ. Code, sec. 2577.) 'It is well settled that the obligation rests upon an applicant for life insurance to disclose such changes in his physical condition as occur pending the negotiation as would influence the judgment of the company as to the advisability of accepting the risk.' (*Thompson* v. *Travelers' Ins. Co.,* 13 N. D. 444 [101 N. W. 900].) The decisions generally are to the same effect. (See note in 8 L. R. A. (N. S.), p. 983.) Since, in accordance with the section of the Civil Code quoted above, the representations contained in the application must in this case be deemed to refer to the time when the premium was paid and the policy delivered, it follows that the assured at that time represented that she had not had any of the diseases to which she returned a negative answer and had not had any illness or disease other than as specifically stated by her. To say that these representations may be ignored in the instance of a person who receives a life insurance policy immediately following upon an attack of typhoid fever, would be to deny one of the most important rights of the

contracting party. The inherent probability that the plaintiff would have hesitated to issue a policy upon the life of Mrs. Young at that particular time, raises to very substantial importance its right to have been informed of the facts.''

Section 2563, *supra*, was applied by this court in *Hart* v. *British etc. Ins. Co.*, 80 Cal. 440 [22 Pac. 302], an action to recover upon a policy for marine insurance upon a barge and a cargo of wheat. The applicant for insurance had information concerning the probable loss of the barge but failed to communicate this information to the insurance company. As a matter of fact, the barge was lost at the time the policy was issued. No inquiry was made by the insurance company as to the safety of the barge and cargo, but the court nevertheless held that the failure on the part of the insured to communicate the information in his possession to the insurer, constituted a concealment of a material fact which the assured was bound to communicate and this failure entitled the insurance company to rescind the contract of insurance. The English rule is that an applicant is bound to disclose a fact material to the risk even though no specific inquiry is made on that subject and the weight of authority in this country favors the English rule. (Bacon on Life and Accident Ins., 4th ed., sec. 270, p. 500.) The statutes of this state commit our courts to the rule approved by the weight of authority. [5] Material facts intentionally concealed or false representations made in reference to them with intent to mislead the insurer is fraud, which, at his option, avoids the policy; and where it is provided that a concealment will warrant the rescission of a contract of insurance, rescission is not an exclusive remedy, as contended by respondent Commission, and the insurer may set up the concealment in an action on the policy. (32 C. J., p. 1271.) In *California etc. Co.* v. *New Zealand Ins. Co.*, 23 Cal. App. 611 [138 Pac. 960], it was held: ''Rescission is not the exclusive remedy of one who has become entitled to avoid a contract by reason of acts or omissions of the other party to it which are fraudulent in their nature. He may cancel the contract by its rescission; or he may seek affirmative relief in a court of equity for any injury sustained by the wrongful act or omission of the other; or he may set up the fraud by way of defense to an action brought to enforce

the apparent liability. (*Toby* v. *Oregon Pac. R. R. Co.,* 98 Cal. 490 [33 Pac. 550]; *Field* v. *Austin,* 131 Cal. 379 [63 Pac. 692]; *More* v. *More,* 133 Cal. 489 [65 Pac. 1044]; *Mabry* v. *Randolph,* 7 Cal. App. 421 [94 Pac. 403].)''

[6]   Notice of ''repudiation'' of the contract and a seasonable return of the premium as made by petitioner to Vessels was sufficient to inform the latter that petitioner did not recognize the contract as valid or binding. The policy being in the hand of Vessels no cancellation could have been made by petitioner.

[7]   Respondent Commission attempts to point out a distinction between a concealment of a material fact and a misrepresentation as to such fact. The legal effect in each instance amounts to the same thing, fraud.

Respondent has cited a number of cases bearing upon various phases of the law of insurance, but as the facts in those cases are not the facts of the instant case it is unnecessary to analyze them. As many of the cited cases turn upon the question of a preliminary parol agreement or memorial of a contract it is proper to specifically state that there is no evidence in the record upon which that issue is sustainable and for that reason the case must be decided upon the provisions of our statutes heretofore cited.

[8]   It is the contention or suggestion of respondent Commission that the dependents of the employee have an enforceable right against petitioner under the alleged policy even though the employer be cut off from any remedy against petitioner. We are unable to understand what principle of law would give the dependents of the employee a cause of action against petitioner upon a contract which is void or voidable as to the employer. It was said in the case of *Employers' L. A. Corp.* v. *Industrial Acc. Com.,* 177 Cal. 771 [171 Pac. 935]: ''We may assume that any defense available to the Insurance Company as against Johnson, the employer, would be equally available against the employee, or his dependents.'' Whether the foregoing quotation be regarded as doctrine or *dicta,* it would seem to express an unimpeachable principle of law. (32 C. J. 1314.)

[9]   There can be no doubt but that the Commission is vested by constitutional and legislative power to hear and determine every issue raised by the parties to this contro-

versy, including the validity of the policy and the question of fraud alleged in its procurement and that the parties are not required to invoke either a court of law or equity in the determination of said questions. (Art. XX, sec. 21, Const.; Workmen's Compensation, Insurance and Safety Act, secs. 1, 55 and 63 (Stats. 1913, pp. 279, 307, 308); *Employers' L. A. Corp.* v. *Industrial Acc. Com.*, 177 Cal. 771 [171 Pac. 935].)

The sole finding of the Commission is not sustained by any evidence in the proceeding. Petitioner is entitled to a finding by the Commission on the question of whether or not the accident to the employee occurred prior to the time that Vessels paid the premium and gained possession of the policy, and whether the accident was then known to Vessels and not known to petitioner and was by said Vessels concealed from petitioner. If these facts be found against the employer it would be a bar to a recovery as against the petitioner. If, however, the accident occurred after the payment of the premium and delivery of the policy, claimants would be entitled to a finding to that effect and judgment accordingly.

It follows that the award made must be, and it is hereby, set aside. The proceeding is remanded to the Commission for further proceedings agreeable to the views herein set out.

Richards, J., Shenk, J., Lawlor, Acting C. J., Waste, J., Hart, J., *pro tem.*, and Lennon, J., concurred.