[Civ. No. 9097. First Appellate District, Division Two.—January 29, 1934.]

ERNEST MAGGINI, Respondent, v. WEST COAST LIFE INSURANCE COMPANY (a Corporation), Appellant.

C. C. Baker, Francis V. Keesling and C. A. S. Frost for Appellant.

J. A. Bardin and J. T. Harrington for Respondent.

NOURSE, P. J.—Plaintiff sued upon two separate policies of insurance issued by the defendant upon the life of one Adolpho Maggini. The first policy was dated May 9, 1932, and the second May 19, 1932. The insured died on June 18, 1932, his death resulting from bronchial pneumonia.

Preliminary to the issuance of the policy the insured signed an application and a report of a medical examiner designated for that purpose by the insurer. Inquiries were put to the insured by the medical examiner in the usual form and those to which attention is directed in this proceeding follow:

"Q. Have you ever been under observation or treatment in any hospital, asylum or sanitarium? A. No."

"Q. Have you ever consulted a physician or practitioner for or have you ever had symptoms pertaining to or disease of: . . . the lungs? A. No."

"Q. Have you ever raised or spat blood? A. No."

"Q. Have you ever suffered from or consulted a physician or anyone else for any ailment or disease not included in your above answer? A. No."

"Q. What physician or practitioner or any other person not named above have you consulted or been treated by, within the last five years and for what illness or ailment? A. None."

Pleading the materiality of all the answers given to the medical examiner the defendant assigned as untrue and fraudulent those statements of the insured denying that he had consulted a physician for or had symptoms pertaining to a disease of the lungs; that he had raised or spat blood; that he had suffered from an ailment of the lungs; that he had consulted or been treated by a physician for any ailment within the last five years; and stating that at the time of making the application he was in good health. It was alleged that these statements of the insured were all false and known by the insured to be false at the time they were made; that for several years next prior to the date of

application the insured had been in poor health and was afflicted with pulmonary ailments which caused a shortening of breath and the spitting of blood; that in the month of June, 1927, the insured suffered an attack of acute bronchitis and was treated by a physician therefor; that from the thirty-first day of July to the eighth day of August, 1928, inclusive, the insured was subject to medical treatment by a physician and to hospitalization by reason of an attack of bronchial pneumonia affecting both lungs; and that in the month of July, 1929, the insured was again subject to medical treatment by reason of illness.

At the trial these allegations of the answer were all proved by competent evidence which was not controverted nor qualified in any degree. The materiality of the statement of the insured and the reliance of the insurer upon those statements was proved by competent evidence which was not controverted and the trial judge properly instructed the jury that the statements were material. Evidence was offered by the plaintiff disclosing that after the first policy was issued by the insurer and before the second policy was issued the insurer received a written report from a retail credit company in response to its inquiry as to the desirability of the risk. This report stated that the insured "has not been seriously ill for five years at which time he had pneumonia and was under the care of Dr. Elmer Bingaman. He is reported to have fully recovered from this. . . . " Upon this showing the respondent rests his case that the insurer had knowledge of the falsity of the statements of the insured prior to the execution of the policy and therefore must be deemed to have waived the fraud and must be held estopped to defend on that ground.

At the close of the evidence the defendant moved for a directed verdict upon the ground that there was no evidence to sustain a verdict for the plaintiff. This motion was denied and the jury brought in a verdict for the plaintiff on both policies. Thereupon the defendant duly made a motion for judgment notwithstanding the verdict. This motion was denied and after judgment had been entered in accordance with the verdict the defendant moved for a new trial, which motion was also denied.

The materiality of the representations cannot be doubted, these being in the form of written answers made to

written questions which the parties themselves thus indicated they deemed material. (14 Cal. Jur., pp. 502, 636; *McEwen* v. *New York Life Ins. Co.*, 23 Cal. App. 694, 697 [139 Pac. 242].) Likewise there can be no controversy that these representations were relied upon by the insurer in issuing the policies. Evidence to this effect was received without objection as was also evidence that if the insurer had known that these representations were false the policies would not have been issued. There was no evidence to the contrary.

Respondent endeavors to bring his case within *Weiss* v. *Policy Holders Ins. Assn.*, 132 Cal. App. 532 [23 Pac. (2d) 38]. The case was decided after this cause was tried. For this purpose respondent frequently refers to the insured as an ignorant and illiterate Swiss milker who was induced to give the false answers by the fraud of the medical examiner. The evidence does not support respondent's characterization of the insured. To the contrary, it shows that he was engaged in the farming and dairy business, sometimes with a partner; that he conducted his own business affairs with banks and other business houses without the aid of an interpreter and was able to speak, read and write in the English language. To bring the case within the Weiss opinion the respondent urges that the court must presume that the medical examiner committed a fraud upon the insured and that in face of the evidence the court should presume that the insured would not intend to commit a fraud. No authority need be cited to the point that the presumption is always against fraud. Here there is not a word of evidence in the record which would support an inference of fraud on the part of the medical examiner and in the absence of such evidence he must be presumed to have acted in good faith. In the Weiss case there was direct evidence of the fraud of the insurer's agent.

The real issue presented by the record is this: when the insurer has knowledge of some misrepresentation on the part of the insured and elects to waive that fraud, is the insurer thereby estopped from raising other frauds of which it had no knowledge? The trial judge instructed the jury both ways and these instructions are the burden of the appellant's principal attack upon the proceedings. In one set of instructions the jury was told that the insurance com-

pany waived or is estopped to assert a violation of the terms of a policy if it fails to cancel or rescind the contract within a reasonable time after notice of the violation. This element was emphasized in instruction number 39 in order which, after advising the jury that the company could have canceled the policies upon knowledge of the fact that the insured had wilfully made false answers to the questions, stated that "if said defendant had such knowledge and could allow it to thus cancel the policies, and that it did not do so, then you are instructed that you may find that such action on the part of the defendant insurance company constituted a waiver or forfeiture of their right to cancel the policies". Again in instruction number 42 in order the jury was told "that an insurance company waives or is estopped to assert a violation of the terms of an insurance contract if the company, after receiving notice of the violation, remains silent and fails to object or to declare a forfeiture, or cancel or rescind the contract, within a reasonable time. . . . This rule is applicable in all cases where the facts brought to the insurer's knowledge show some violation of the terms of the policy, which, either by law or because of some provision of the policy itself, operates to avoid or forfeit the policy." But in instruction number 45 in order the jury was told that "the defendant in this case was not bound to rescind the contracts of insurance in order to defend under its terms against any liability thereupon by reason of the misrepresentations by the insured as to material matters. . . . " And again in instruction number 46 in order the jury was told that though the insurer had the right to rescind the contracts of insurance upon discovery of false representations it was under no obligation to do so but might elect to await action upon the part of the beneficiary and defend upon that ground.

The latter two instructions correctly state the law applicable to the doctrine of waiver and estoppel. The instructions given at the request of the respondent on these questions are contrary to all the authorities. Respondent's only answer to this attack upon the instructions is that all the instructions must be read together. This is an accepted rule but it does not aid when instructions are directly conflicting and antagonistic on essential matters of law and the record compels the conclusion that the jury must have fol-

lowed the erroneous instructions in order to arrive at the verdict which was returned.

■ One other assignment of error requires but brief consideration. At the request of the respondent the jury was instructed that it was incumbent upon the defendant to prove by the preponderance of evidence *not only* that the answers of the insured were untrue *but also* that they were made with the intention of concealing his true state of health so that he might deceive the insurance company. Upon the same issue the jury was instructed that a presumption of intent to deceive is only made when statements are made with knowledge of their falsity and that the burden was upon the insurer to show that the misrepresentations were wilfully made and that if the jury found that the insured "did not make wilfully false statements to the questions asked of him by the medical examiner for the defendant insurance company, then you are instructed that said defendant has no right to cancel or rescind the policies sued upon". The rule in this respect is statutory. Section 2562, Civil Code, reads: *"Effect of concealment.* A concealment, whether intentional or unintentional, entitles the injured party to *rescind* a contract of insurance."  Under this section an intent to deceive on the part of the insured is immaterial, and such intent is presumed when the insured had knowledge of the falsity of the statements. (*Whitney* v. *West Coast Life Ins. Co.,* 177 Cal. 74, 80 [169 Pac. 997].)  Hence to instruct the jury that it was incumbent upon the insurer to prove that the concealment was made with intent to deceive the insurance company placed upon the company a burden which the law does not impose. Furthermore, when the jury was told that unless it found that the insured wilfully made these false statements with intent to deceive the insurance company then the company had no right to cancel or rescind the policies, a rule of law was announced which is not in accord with the provisions of section 2562, Civil Code. The decisions following that section hold that rescission is not the exclusive remedy but that the insurer may, because of that section, set up the fraud by way of defense to an action brought to enforce the policy. (*California Reclamation Co.* v. *New Zealand Ins. Co.,* 23 Cal. App. 611, 615 [138 Pac. 960]; *General Accident, Fire & Life Assur. Corp.* v. *Industrial Acc. Com.,*

196 Cal. 179, 189 [237 Pac. 33].) These authorities emphasize the error of the instructions heretofore discussed relating to the issue of waiver through failure to rescind.

█ Respondent's argument on the issue of estoppel is founded on the premise that when the insured, in good faith, makes truthful answers which are incorrectly transcribed through the fraud or negligence of the insurer's agent, the insurer is estopped to set up their falsity. This premise is not available to respondent—the statute eliminates the element of good faith and the evidence dispels the assumption of fraud or negligence. The defense of estoppel arises from section 1962, Code of Civil Procedure: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it; . . . " It is essential that the party pleading an estoppel must be ignorant of the true state of facts and must have been intentionally led to alter his course to his injury by the act of the other. (10 Cal. Jur., p. 626.) Hence there can be no estoppel of one who has no knowledge of the facts as there can be no claim of estoppel by one who knows his representations are false and knows that the other party is ignorant of their falsity.

█ But the evidence is clear that the appellant did not have any knowledge of the falsity of any of these misrepresentations except that relating to the illness of the insured five years prior to the date of the policies. This may have been sufficient to raise a suspicion as to the truth of other representations relied on; but cause for suspicion does not constitute knowledge. Hence there could be no estoppel of the insurer's right to "set up the fraud by way of defense to an action brought to enforce the apparent liability". (*California Reclamation Co.* v. *New Zealand Ins. Co.*, 23 Cal. App. 611, 615 [138 Pac. 960, 961]; *General Accident, Fire & Life Assur. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179, 189, 190 [237 Pac. 33].) █ If the cause had been tried by the court without a jury the defendant would have been entitled to an express finding that the representations were false, that they were material, and that the insurer was not estopped to set up the fraud. The evidence compels implied findings by the jury to the same effect. As there

is no evidence direct or inferential which supports the verdict the defendant's motion for a judgment notwithstanding the verdict should have been granted.

The judgment is reversed, with directions to enter judgment for the appellant as herein indicated.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 28, 1934, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 29, 1934.

Shenk, J., and Preston, J., dissented.