George Edward STRAUB, Plaintiff,

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, a foreign corporation, Defendant.**

Civ. No. 6901.

United States District Court,
D. Canal Zone,
Balboa Division.

Dec. 17, 1971.

William J. Sheridan, Jr., Balboa Heights, Canal Zone, for plaintiff.

Albert J. Joyce, Jr., Balboa, Canal Zone, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CROWE, District Judge.

1. The plaintiff, George Edward Straub, applied for a policy of health insurance with the defendant, Mutual of Omaha Insurance Company, on May 28, 1969 and in the application certain questions were proposed covering the physical condition of the applicant and his dependent wife, Rita Clifford Straub.

2. Pursuant to the application, the defendant issued Policy Number 70 FH 352289–68M, dated May 28, 1968, which was entitled "Medical and Hospitalization Insurance Policy" and the plaintiff paid to the defendant an initial premium of $54.90.

3. On September 20, 1968 through October 3, 1968 and from May 12, 1969 through May 14, 1969 and from May 26, 1969 through May 31, 1969, Rita Clifford Straub became ill from cancer of the breasts which necessitated hospitalization, medical care, surgery, radiological therapy, and physiotherapy, the costs of which were in the amount of $2,782.61. It later developed in the pelvic area, but there is no showing that any of the claim and hospitalization was due to the cancer in any area except that of the breasts.

4. The plaintiff filed a claim with the defendant in April, 1969 and thereafter amended his claim on June 22, 1969, setting up the medical and hospitalization expenses, and the defendant replied by refusing to honor the claim on the ground that certain answers on the application for insurance, made by the plaintiff, were not true and were incomplete, and assumed the position that the insurance contract was therefore set aside and without force and effect, and remitted to the plaintiff a refund covering all premiums paid to that date, in the amount of $274.50.

5. The particular questions in the application for insurance which are the subject of this litigation are as follows:

"2. Have you or any dependents ever had, or been advised by a physician that you had, or received advice or treatment for: (Circle conditions answered 'yes' and give details in 5. below.)

(c) Any form of tuberculosis; kidney or bladder trouble, prostate trouble, female trouble, venereal disease?

(e) Cancer, tumor or any form of growth; any deformity; loss of hearing; loss of, or loss of use of, eye or limb?"

and to each of these the plaintiff answered "no".

"3. Have you or any dependents ever had, or been told you had, or received advice or treatment for:
(a) any physical conditions or injuries not mentioned above, or
(b) any symptoms of ill health?"

and to this the plaintiff answered "no". No details were given in 5., as directed, and in filling out 5. there was a place for the name of his wife, and after her name, in the column headed by the language "Condition, Injury, Symptom of Ill Health, or Findings of Examination (if operation performed, state type)", the plaintiff placed the language "General Check", 1968, by Dr. Maritano.

6. The plaintiff and Mrs. Straub were married in 1957 and prior to that time, she had had an ovarian tube (salpingectomy) and her appendix removed

in 1941, and, also, an operation was performed called a "uterine suspension", which was to correct a condition caused by a fall.

7. After the marriage she suffered over a period of six years from anemia and was treated for vaginal bleeding in the years 1963, 1964, 1965, 1966, 1967 and 1968 and had had several blood transfusions, which were incident to the flooding and anemia. During this time she was working hard and was very active in teaching music and working as a newspaperwoman and both she and the plaintiff were convinced that her health was good. The vaginal bleeding was due to fibroid tumors of the uterus, which would, she believed, "dry up and go away" and the bleeding would cease after the "passage of menopause."

8. On May 22, 1969, six days before the execution of the application on May 28, 1968, Rita Clifford Straub received treatment for "fibroids in uterus" and the medical history reflected in the report states, "she had Gyn exam on 4/27/64 at which time fibroids and anemia diagnosed." This treatment was at Gorgas Hospital in the Canal Zone.

9. The plaintiff either knew of the condition of his wife's health after their marriage or was charged with knowing them when making the application.

10. Mr. Joseph B. Lockman, Manager of Mutual of Omaha in Panama City, testified that if question 2(c) had been answered "yes" and if question 5. had been answered to embrace all of the personally known medical history of Mrs. Straub, as testified, the application would have been rejected.

11. The cancers that developed in the breasts of Rita Clifford Straub necessitated the removal of the breasts, but from the letter of Dr. Leslie S. Archer, who performed an examination of her breasts and pelvic area in 1968, shortly before he left the Isthmus in June of that year, it is found that there was no sign of cancer or pre-cancer. From further medical testimony, it is found by this Court that the fibroid tumors and excessive menstrual flow "in the past has absolutely no relationship to the present cancer, which she did, and still continues to suffer."

12. The policy, although offered generally to the public, is not a "group type policy" but is the kind of policy issued on a selective basis and the company accepts or rejects on the application.

13. The parties did not contract for the payment by the defendant of any attorney's fees of the plaintiff in any contemplated action by the plaintiff against the defendant on the contract of insurance.

### CONCLUSIONS OF LAW

1. The court has jurisdiction of the action.

2. The rules governing avoidance of forfeiture of a life insurance policy for misrepresentations are in general applicable to policies of health insurance. Except as otherwise provided by statute, insuror may avoid a policy of health insurance if it is induced either by insured's intentional concealment or misrepresentation of facts material to the risk. On the other hand, it is generally considered that the company cannot claim forfeiture of the policy for statements which, although untrue, were not made fraudulently or with intent to deceive or which were not material; but there is authority holding, by virtue either of statutory or contractual provisions, that falsity of representations materially affecting the risk defeats the insurance, although such representations were made in good faith and were without intentional deceit. A misrepresentation will be deemed material where it is reasonably calculated to affect the action and conduct of the company and a suppression of a series of facts as to conditions of health and recurrent illnesses may be material, although some of those facts singly may appear relatively unimportant. 45 C.J.S. Insurance § 663.

An insured's failure to disclose facts that she had been treated for a thyroid condition and had an operation for the removal of the thyroid gland, in answering questions in the application for a hospitalization policy as to whether she

had had medical or surgical treatment within the past seven years, and ever had surgery, is material misrepresentation and the suppression or leaving out of such facts is a bar to recovery under a hospitalization policy. Kuritzky v. National Casualty Company, 261 A.D. 1083, 27 N.Y.S.2d 5.

In the same case it was held that even though assured's misrepresentation regarding her prior medical hospitalization was innocently made it would void the policy as it materially affected the acceptance of the risk or hazard assumed by the insuror.

3. The law concerning concealment and representations in regard to insurance contracts is well set out in statutory form in Title 4 of the Canal Zone Code in Subchapter V., and is as follows:

"§ 3331. Definition of concealment

Neglect to communicate that which a party knows, and ought to communicate, is concealment.

"§ 3332. Effect of concealment

Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.

"§ 3333. Required disclosure

Each party to a contract of insurance must communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other party has not the means of ascertaining.

"§ 3334. Required inquiry

Except in answer to the inquiries of the other, neither party to a contract of insurance is bound to communicate information of matters:

(1) which the other knows;

(2) which, in the exercise of ordinary care, the other ought to know, and of which the former has no reason to suppose him ignorant;

(3) of which the other waives communication;

(4) which prove or tend to prove the existence of a risk excluded by a warranty, and which are not otherwise material; and

(5) which relate to a risk excepted from the policy, and which are not otherwise material.

"§ 3335. Test of materiality

Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract or in making his inquiries.

"§ 3336. Presumed knowledge

Each party to a contract of insurance is bound to know all the:

(1) general causes which are open to his inquiry equally with that of the other, and which may affect either the political or material perils contemplated; and

(2) general usages of trade."

4. The facts in this case are that the disease which caused the hospitalization and accumulation of medical costs was cancer of the breasts and not related to the illnesses suffered by the wife of the applicant prior to the application but, even so, did his untruthful answers fail to disclose a physical condition in his wife which would increase the risk of the insurer and thus be material? The answer to this question is positive. The plaintiff stated in his reply to question 2(c) that she had had no female trouble when, in fact, she had had a history of menstrual flooding and excessive flow for a period of about five years, which caused her to be anemic and required several transfusions over the years. He replied "no" to question 2(e) wherein it was asked if there was any history of "tumor or any form of growth" when, in fact, Mrs. Straub had had a diagnosis of fibroid tumors in 1964 and was treated for this condition only six days prior to the execution of the application for the policy. In reply to question 5, which requested the "Condition, Injury, Symptom of Ill Health, or Findings of Examination" in detail, the answer was "General Check, 1968, Dr. R.

G. Maritano" when, in fact, Dr. Maritano's records disclose that the lady had been under medical treatment for anemia beginning on August 1, 1963 and continuing through the years 1964, 1965, 1966, 1967 and 1968, and she was attended by Dr. Maritano's clinic on several occasions when she was suffering from colds, methrorragia, a back pain, and in 1966 she was treated for contusions resulting from the "aggression by a thief".

■ Mrs. Straub testified that she did not communicate to her husband the fact that she was suffering from fibroid tumors, but it was his responsibility to know whether or not she had such condition and convey the information to the insurer before the insurer was bound. It has been held that a concealment, whether intentional or unintentional, entitled the injured party to rescind a contract of insurance. Maggini v. West Coast Life Insurance Company, 136 Cal.App. 472, 29 P.2d 263 (1934).

■ A person who makes representations of material facts, assuming or intending to convey the impression that he has actual knowledge of the existence of such facts, when he is conscious that he has no such knowledge, is as much responsible for the injurious consequences of such representations, to one who believes and acts upon them, as if he had actual knowledge of their falsity. Danaher v. United States, 184 F.2d 673.

■ The test of materiality of false representations in the application for a policy is whether or not they are material to the risk and is usually considered one of fact unless under the evidence there could be no reasonable difference of opinion.

It was held in Indiana that the test of materiality is not that the company was influenced, but whether the facts, if truly stated, might reasonably have influenced the company in deciding whether it should reject or accept the risk. Billington v. Prudential Insurance Company, 254 F.2d 428 (1958).

The District Court of Appeal of California, in 1955, in determining the materiality of misrepresentation, said, concerning falsely answered inquiries relative to the condition of the applicant's health, that the cause of death thereafter, even though not related to the bad health that existed prior to the application, would still invalidate the policy. The court said, "The vice of the misrepresentations made by decedent would still be seriously grave, in appellant's quest for payment, even though decedent had perished in a storm at sea." Robinson v. Occidental Life Insurance Company, 131 Cal.App.2d 581, 281 P.2d 39.

■ 5. Where an insurer propounds a question to an applicant for insurance as to whether he has or has had certain specified ailments or diseases, the applicant, at the risk of having the policy otherwise avoided, must truthfully state and disclose such material information as he possesses in regard to the present or previous existence of such ailments or diseases. A statement as to affliction with ailments is material as a matter of law, and where an insured makes a warranty that he has not had a specified ailment, it is immaterial that the insured's general health was not affected thereby, if he had had such ailment. 43 Am.Jur.2d § 786.

Applications for life, health, or accident insurance frequently or generally contain questions which require the applicant to disclose previous medical attention or treatment, and to specify the diseases or ailments treated, and in some instances, the attending physicians. Representations as to medical attention are generally deemed material as a matter of law, without reference to the circumstance that the facts suppressed have no causal connection with the death of the insured, and statements in such respect in an application for insurance which is attached to and made part of the policy may constitute warranties in accident as well as in life insurance. 43 Am.Jur.2d § 791.

6. For the reasons set out in these findings of law the complaint of George Edward Straub is dismissed and the defendant shall recover the costs of the action.